**MADDEN, Regional Director of National Labor Relations Board, v. BROTHERHOOD AND UNION OF TRANSIT EMPLOYEES OF BALTIMORE.**

**No. 5339.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 29, 1945.

440

Charles F. McErlean, Attorney, National
Labor Relations Board, of Washington,
D. C. (Alvin J. Rockwell, General Counsel,
Malcolm ·F. Halliday, Associate General
Counsel, and Thomas B. Sweeney, all of
Washington, D. C., and Earle K. Shawe,
Attorney, National Labor Relations Board,
of Baltimore, Md., on the brief), for ap-
pellant.

Jacob Blum, of Baltimore, Md. (Benja-
min Swogell and Joseph Buchoff, both of
Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER and DOBIE,
Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order enjoining
the Regional Director of the National La-
bor Relations Board from conducting an
election ordered by the Board to determine
the bargaining representative, pursuant to
Section 9(c) of the National Labor Rela-
tions Act, 29 U.S.C.A. § 159(c), of the em-
ployees of the Baltimore Transit Company
and the Baltimore Coach Company. The
9(c) proceeding was originated by the filing
of petitions by the Brotherhood and Union
of Transit Employees of Baltimore, and by
an A. F. of L. union, the Amalgamated
Association of Street, Electric Railway and
Motor Coach Employees of America. The
union charged that the brotherhood was a
mere successor to or continuation of the
Independent Union of the Transit Em-
ployees of Baltimore City, a company union
theretofore ordered disestablished by the
Board in an order enforced by this Court
National Labor Relations Board v. Balti-
more Transit Co. et al., 4 Cir., 140 F.2d 51;
that it was a company dominated organiza-
tion; and that for this reason it was not a
fit representative of the employees for the
purposes of collective bargaining. The
Board investigated this question, over the
objection of the brotherhood, in the course
of the 9(c) proceedings and, upon finding
that the brotherhood was a mere continua-
tion of the old organization and was com-
pany dominated, ordered that it be not
placed upon the ballot in the election which
was ordered for the purpose of determin-
ing the bargaining representative. The
holding of this election was enjoined by
the court below on the ground that the
Board was without power to investigate
the question of company domination in a
9(c) proceeding, which is not subject to
judicial review, and that because it consid-
ered such question the order directing that
the election be held was illegal and void.

The position of the Board with respect to the question involved is set forth in its decision and order directing the election as follows:

"It would appear to be the position of the Brotherhood that the Board is powerless in a representation proceeding to deny any union a place on the ballot on the ground that it is a successor to an organization previously ordered disestablished unless a finding of such successorship is first made in a complaint proceeding. Solely from the standpoint of effectuating the purposes of the Act, we consider such a concept of the dual functions bestowed upon the Board to be clearly erroneous. If such an interpretation of the Act were valid, it is entirely conceivable that, in a given situation, a representation proceeding would be postponed indefinitely. Thus, for example, a complaint proceeding might result in the disestablishment of one union, only to have its successor spring up and intervene in the representation proceeding. To keep the successor off the ballot, another complaint proceeding would have to be instituted to disestablish it. Thereafter, a second successor might spring up and intervene in the representation proceeding, and so on ad infinitum. Meanwhile, the employees concerned would be denied the opportunity to choose a collective bargaining representative which the Act guarantees, with resultant friction between management and employees, and among groups of employees. The very purposes of the Act would be thwarted thereby. To avert such a vicious cycle, the Brotherhood suggests that the Board should institute contempt proceedings, and there try the issue of successorship. It is true that contempt proceedings may be lodged against an employer where the Board's order of disestablishment has been enforced by court decree, and a successor organization has come into existence. But there may be situations in which the employer has engaged in no overt acts of a contemptuous character and yet the successor organization may clearly appear to the employees to be tainted as was its predecessor. However, the existence of facts which may arguably be said to be such as to warrant contempt proceedings does not mean that all activity with respect to a representation proceeding must be stayed, pending the determination by the courts that an employer is or is not in contempt. Nowhere in the Act is there any indication that the Board is compelled to resort first to action under Section 10, or proceedings ancillary thereto, in order effectively to perform its functions under Section 9 of the Act. The argument that, because alternative courses of action are available, the Board is precluded from the procedure followed herein, is particularly not persuasive where a legitimate organization is claiming to represent a majority of the Company's employees in an appropriate unit, and when the prompt resolution of its claim may serve to resolve the entire controversy and preclude the necessity for further protracted proceedings."

■ On the argument in this court, the Brotherhood has taken the position that, while it is permissible for the Board to consider a disestablishment proceeding in connection with a proceeding under 9(c) to determine the bargaining representative, any consideration of company domination should be had in a disestablishment proceeding conducted under 10(c), 29 U.S.C.A. § 160(c), which is subject to review by the courts, and that it is not permissible for the Board to consider company domination of a union in 9(c) proceedings except in conjunction with such disestablishment proceedings instituted under 10(c). The Brotherhood concedes that the election ordered need not await the termination of the 10(c) proceedings. We are not impressed by this position. Congress has clearly provided that whether the Board shall combine a complaint proceeding under section 10 of the Act with a representation proceeding under 9(c) is left to the discretion of the Board. Section 9(c) provides: "Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, *either in conjunction with a proceeding under section 10 or otherwise,* and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives." (Italics supplied.)

■ It is argued that the discretion thus vested in the Board extends merely to combining the hearing of proceedings and precludes the consideration on a 9(c) proceeding of any matter which could be made the subject of complaint under section 10; but we think there is no basis for such contention. It was clearly not the intention of

Congress that the Board should place on the ballot in an election an employer dominated organization (N.L.R.B. v. Falk Corporation, 308 U.S. 453, 461, 462, 60 S.Ct. 307, 84 L.Ed. 396) ; and it is inconceivable that it should have been intended that the summary procedure provided by section 9(c) should be delayed while complaint proceedings under section 10 were being conducted.

▆▆▆▆ If, however, it be thought that the Board was in error as to this matter, it does not follow that its order directing the election was void or. illegal so that the director would be subject to injunction in his individual capacity in carrying it out. The statute expressly authorizes the Board to make use of an election for the purpose of determining the bargaining representative; and, when it exercises this power, it is performing an official duty under the statute. The case is not one where the action of the Board is without constitutional or statutory authority, as in Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927, upon which the Brotherhood relies. See our decision in Ferris v. Wilbur, 4 Cir., 27 F.2d 262, and cases there cited for the distinction. What we have here is merely the ordering of an election to determine the bargaining representative for the employees as provided by section 9(c) of the Act. The only ground urged for granting such injunction is that, without conducting a complaint proceeding under section 10, the Board has held. the Brotherhood to be employer dominated and for that reason not entitled to a place on the ballot in the election to be held. To enjoin the action of the Board on such ground, however, is to review proceedings taken by it in the exercise of power conferred by. Congress and to reverse the Board's decision for error of law; and it is perfectly clear, we think, that such power of review has not been conferred on the courts. Only when an order of the Board is made pursuant to section 10(c), and such order is based in whole or in part upon facts certified following an investigation pursuant to 9(c), is judicial review of 9(c) proceedings authorized; and in such case review is authorized by the Circuit Courts of Appeals, not by the District Courts. Sec. 9(d), 29 U.S.C.A. § 159(d) ; American Federation of Labor v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; N. L. R. B. v. International Brotherhood, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354; N. L. R. B. v.

Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 310, 84 L.Ed. 396. As said by the Supreme Court in the case last cited:

"Nor can authority for such anticipatory judicial control of election methods be found in Section 9(d) which permits a review only in those cases in which the Board makes an order relating to labor practices found to be unfair as a result of a prior certification of a selected bargaining agent. Here, the Board's order that the employer cease its unfair practices, disestablish the company union and post notices was not 'based in whole or in part upon facts certified' as the result of an election or investigation made by the Board pursuant to Section 9(c). The proposed election here has not even been held and consequently no certification of a proper bargaining agent has been made by the Board. Until that election is held, there can be no certification of a bargaining representative and no Board order—based on a certification, has been or can be made, so as to invoke the court's powers under 9(d).

"The fundamental error of the court below lay in its assumption·that there was before it 'for final disposition, the matter of the selection of the bargaining agent.' The court has no right to review a proposed election and in effect to supervise the manner in which it shall thereafter be conducted. There can be no court review under 9(d) until the Board issues an order and requires the employer to do something predicated upon the result of an election."

It is hardly possible that Congress should have intended to permit review by District Courts of 9(c) proceedings while so carefully limiting review of such proceedings in the Circuit Courts of Appeals to cases in which an order under 10(c) has been entered. The history of the Act shows that there was no intent to permit judicial review of 9(c) proceedings at all, except by the Circuit Courts of Appeals under 9(d). Thus, in the Senate Committee Report on the bill which subsequently became the Act, it is said (S.Rep. No. 573, 74th Cong. 1st Sess. p. 14): "Section 9(d) makes it absolutely clear that there shall be no right to court review anterior to the holding of an election. An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees. There is no more reason for court review prior to an election than for court review prior to a

hearing. But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by any aggrieved party in the Federal courts in the manner provided in section 10. And this review would include within its scope the action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board."

The House Committee (H.Rep. No. 1147, 74th Cong., 1st Sess., p. 23) said: "As previously stated in this report, the efficacy of Public Resolution 44 has been substantially impaired by the provision for court review of election orders prior to the holding of the election. Section 9(d) of the bill makes clear that there is to be no court review prior to the holding of the election, and provides an *exclusive, complete, and adequate remedy* whenever an order of the Board made pursuant to Section 10(c) is based in whole or in part upon facts certified following an election or other investigation pursuant to Section 9(c). The hearing required to be held in any such investigation provides an appropriate safeguard and opportunity to be heard. Since the certification and the record of the investigation are required to be included in the transcript of the entire record filed pursuant to Section 10(e) or (f), the Board's actions and determinations of fact and law in regard thereto will be subject to the same court review as is provided for its other determinations under Sections 10(b) and (c)." (Italics supplied).

The Senate report above referred to shows that judicial review of 9(c) proceedings was deliberately withheld because of experience under prior legislation. At pp. 5 and 6 it is said:

"Under Public Resolution 44, any attempt by the Government to conduct an election of representatives may be contested ab initio in the courts, although such election is in reality merely a preliminary determination of fact. This means that the Government can be delayed indefinitely before it takes the first step toward industrial peace. After almost a year not a single case, in which a company has chosen to contest an election order of the Board, has reached decision in any circuit court of appeals.

"This break-down of the law is breeding the very evil which the law was designed to prevent."

And the House report p. 7 deals with the same matter as follows: "When an employee organization has built up its membership to a point where it is entitled to be recognized as the representative of the employees for collective bargaining, and the employer refuses to accord such recognition, the union, unless an election can promptly be held to determine the choice of representation, runs the risk of impairment of strength by attrition and delay while the case is dragging on through the courts, or else is forced to call a strike to achieve recognition by its own economic power. Such strikes have been called when election orders of the National Labor Relations Board have been held up by court review."

The same matter was discussed on the floor of the Senate during the consideration of the bill as follows (79 Cong. Rec. 7658):

"Mr. Couzens. The Senator said that Resolution 44 was ineffective. Will he tell us before he concludes why Resolution 44 was ineffective?

"Mr. Walsh. It was ineffective, as I think I stated, because of appeals to the courts. In cases where attempts have been made to hold elections the claim has been made that the Board had no legal authority; the cases have been brought into court, and they are in the courts and undecided.

\*      \*      \*      \*      \*      \*

"Mr. Couzens. Would the passage of the pending bill remove the appeals to the courts?

"Mr. Walsh. Yes; it would because it limits appeals. It provides for review in the courts *only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election.*" (Italics supplied.)

In 1937 legislation was proposed before Congress, which would have amended the National Labor Relations Act to provide review of certification proceedings; and the fact that such legislation was never enacted throws further light upon the legislative intent. While the proposed legislation was pending, Mr. Charles Fahy, then Counsel for the Board, now Solicitor General, discussed at length the matter here under consideration in the hearings before the Senate Committee on Education and Labor. See Hearings before the Committee on Education and Labor of the United States

Senate, 66th Congress, of April 26, 1939, pp. 460-463. Among other things he said:

"The Board recognizes that its determination in these cases conflicts at times with the claims of one or another of two or more competing unions; but we believe that there are weighty considerations against authorizing court review of such determinations before any order is made based on the determinations. Such review ultimately means that collective bargaining is prevented where two or more labor organizations are involved in these cases, even though the employer is willing, though not compelled, to accede to the Board's views as to the unit and determination of fact as to majority selections of representatives in the unit. It would be injurious to employees generally and to the public interest to delay the right of the employer to acquiesce in these determinations. It would tend strongly to bring back conditions under which peaceful negotiation would be checked indefinitely. Proceedings for review of Board certifications would require from 6 months to a year to be concluded by the circuit courts and thereafter there might be another 90-day period in which to apply for certiorari to the Supreme Court, and if certiorari were granted, additional months would pass before final decision, without taking into account summer recesses which might intervene and other delays incident to litigation. But such delays are not all. The fact is that at the conclusion of the court review, were the court to approve the Board's determinations, the factual situation would in the meantime have changed. The union certified by the Board as having the majority may well have lost its majority, or at least doubt as to the majority may have arisen. The long process accordingly must be pursued anew, ad infinitum, so long as any competing union desired to continue the contest as a means of preventing its rival from being recognized by the employer.

\* \* \* \* \* \*

"I fear the proposal opens the doors wide to defeat of the great purposes of the act. One of the most significant contributions of the act has been the determination of bargaining representatives, usually by the use of the secret ballot. A. F. of L. unions are constantly being certified under the act, and elections in which that organization participates with success are constantly being held. This could not occur if the present amendment were in the law. It would not have occurred in the past. Minority groups could readily form labor organizations and obtain review of all such certifications, thus defeating all collective bargaining.

"It is better to suffer dissatisfaction with some unit determinations, than to have each bound up in long drawn-out litigation easily initiated by rival or minority groups. You would afford a method for the destruction of collective bargaining by this provision.

"Neither the interests of labor nor the public interest, nor employer interest, requires review of every action of the agency administering a law. Congress, consistently with due process, is not required to provide court review of certifications, and need not do so if the larger purposes of the act are better accomplished without it, notwithstanding some dissatisfaction may occur in particular cases by reason of the absence of such review. No legal injury occurs. Review is therefore not required. It is a question of balancing advantages and disadvantages. It is not unusual, or unconstitutional, to preclude court review of certain findings of governmental agencies, not amounting to a final order having compulsory effect or binding force. The certification of one union is not a deprivation of a right of another union in a legal sense, since the certification is not an order and itself brings about no injury."

The question as to whether a certification proceeding could be reviewed on application to a District Court for injunction was answered in the negative by the U. S. Court of Appeals of the District of Columbia in Millis v. Inland Empire Dist. Council, App.D.C., 144 F.2d 539.[1] The decision in that case is grounded upon the Supreme Court's decision in Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 98, which we regard as controlling here. In the Switchmen's case, it was sought to review the action of the National Mediation Board in certifying a union as bargaining representative. In holding that, notwithstanding the conclusive character of

---

[1] See also Sun Ship Employees Ass'n Inc., v. N. L. R. B., 3 Cir., 139 F.2d 744; Utah Copper Co. v. N. L. R. B., 10 Cir., 136 F.2d 485. Contra, see Reilly v. Millis, D.C., 52 F.Supp. 172; International Brotherhood of Electrical Workers v. N. L. R. B., D.C., 41 F.Supp. 57; Klein v. Herrick, D.C., 41 F.Supp. 417; A. F. of L. v. Madden, D.C., 33 F.Supp. 943; Inland Empire District Council, etc., v. Graham, D.C., 53 F.Supp. 369.

the order, there was no power of review in the Courts, the Supreme Court said: "The fact that the certificate of the Mediation Board is conclusive is of course no ground for judicial review. Great Northern Ry. Co. v. United States, 277 U. S. 172, 182, 48 S.Ct. 466, 467, 72 L.Ed. 838. Congress has long delegated to executive officers or executive agencies the determination of complicated questions of fact and of law. And where no judicial review was provided by Congress this Court has often refused to furnish one even where questions of law might be involved. See Louisiana v. McAdoo, 234 U.S. 627, 633, 34 S.Ct. 938, 940, 58 L.Ed. 1506; United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259; Work v. United States ex rel. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561; United States v. Babcock, supra. We need not determine the full reach of that rule. See Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894; Houston v. St. Louis Independent Packing Co., 249 U.S. 479, 39 S.Ct. 332, 63 L.Ed. 717. But its application here is most appropriate by reason of the pattern of this Act."

In view of the fact that Congress has provided for review of certain orders made under the National Labor Relations Act, but has not provided for the review of others, including such as herein involved, the following passage of the opinion in the Switchmen's case is important, viz.: "When Congress in § 3 and in § 9 provided for judicial review of two types of orders or awards and in § 2 of the same Act omitted any such provision as respects a third type, it drew a plain line of distinction. And the inference is strong from the history of the Act that that distinction was not inadvertent. The language of the Act read in light of that history supports the view that Congress gave administrative action under § 2, Ninth a finality which it denied administrative action under the other sections of the Act."

Relevant also is the decision in the case of General Committee, etc., v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 64 S.Ct. 146, 150. That case also involved a dispute under the Railway Labor Act; but there, as here, the point in controversy was whether a representation question was justiciable in the Courts. In holding that Congress intended to go no further in the process of adjudication and litigation than the express provisions of the act indicate, the Court said: "Congress was dealing with a subject highly charged with emotion. Its approach has not only been slow; it has been piecemeal. Congress has been highly selective in its use of legal machinery. The delicacy of these problems has made it hesitant to go too fast or too far. The inference is strong that Congress intended to go no further in its use of the processes of adjudication and litigation than the express provisions of the Act indicate."

It is argued that, by deciding the question of domination in a representation proceeding, the Board cuts off the right of review which would be available if the question were decided in an unfair practice proceeding under Section 10. The answer is that Congress intended that there should be a review of an unfair practice proceeding but not of a representation proceeding. There is a vital difference between the two. The order made in an unfair practice proceeding is a final order involving definite commands and prohibitions and is a proper subject of judicial review. The order in a representative proceeding directing an election is a mere interlocutory order in the administrative process leading up to the collective bargaining which is the object of the statute. It is a mere step in the preliminary administrative proceeding; and it is well settled that the Federal Courts will not interfere with an administrative agency at an intermediate point in its procedure and before all administrative proceedings are completed. Rochester Telephone Corporation v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 83 L.Ed. 1147; United States v. Illinois Central R. R. Co., 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007; United States et al. v. Los Angeles & S. L. R. R. Co., 273 U.S. 299, 308-310, 47 S.Ct. 413, 71 L.Ed. 651; Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 385, 58 S.Ct. 963, 82 L.Ed. 1408; Myers v. Bethlehem Shipbuilding Corporation, Ltd., 303 U.S. 41, 50, 51, 58 S.Ct. 459, 82 L.Ed. 638; cf. N. L. R. B. v. International Brotherhood of Electrical Workers, 308 U.S. 413, 415, 60 S.Ct. 306, 84 L.Ed. 354.

For the reasons stated, we think that the Court below was without jurisdiction to entertain the suit, that there was error in granting the injunction and that the motion to dismiss should have been allowed. The Order appealed from will accordingly be reversed and the cause will be remanded with directions to dismiss the bill.

Reversed.