Order, therefore, may be drawn in accordance with this opinion.

NEW BEDFORD LOOMFIXERS' UNION (INDEPENDENT) et al. v. ALPERT et al.

Civ. A. No. 53-183.

United States District Court D. Massachusetts.

March 2, 1953.

Joseph C. Duggan, George D. Constantine, New Bedford, Mass., for plaintiffs.

Robert G. Johnson, Washington, D. C., Robert E. Greene, Boston, Mass., for defendants.

FORD, District Judge.

Plaintiff union in this action is an unaffiliated labor union composed of loomfixers, spare fixers, and changers-over or apprentice loomfixers, (hereinafter designated collectively as loomfixers) employed in the textile mills of New Bedford, Massachusetts. Since its organization in 1890, plaintiff union represented its members for collective bargaining purposes until 1943 (and in the case of some mills in New Bedford until 1945). From those dates until the present time, the defendant National Labor Relations Board (hereinafter called the Board) has refused to certify plaintiff union as the collective bargaining representative. Plaintiff union has contended that its members constitute a recognized craft, and that the members of that craft employed in the New Bedford mills should be designated as an appropriate unit for collective bargaining purposes. This the Board has refused to do, and has designated as the appropriate unit a larger group consisting in general of all the production and maintenance employees, including loomfixers, of the member mills of the New Bedford Cotton Manufacturers Association (hereinafter called the Association). Since the loomfixers constitute only a small percentage of all the workers in the larger group, another union has been chosen and certified as the exclusive collective bargaining agent of the larger group. It has entered into a collective bargaining agreement with the employers by the terms of which the loomfixers have been obliged to become members of the certified union and pay dues thereto as a condition of employment. It is the contention of the loomfixers that if the craft were designated as a separate bargaining unit, the great majority of the members of such craft unit would desire plaintiff union as their bargaining representative.

In 1943, plaintiff union, as a constituent member of the New Bedford Textile Coun-

cil, was a party to a representation hearing following which the Board found that the appropriate unit was a unit of all production and maintenance employees of the member mills of the Association. In the Matter of New Bedford Cotton Manufacturers Association, 47 N.L.R.B. 1345. The Board made the same decision in 1945 following a hearing to which plaintiff union, which had then terminated its affiliation with the United Textile Workers of America, was a party. 62 N.L.R.B. 1249.

Thereafter, in June 1947, plaintiff union filed a petition with the Board seeking certification for the same unit involved in the instant petition. The Regional Director, following investigation, dismissed this petition on the basis of the prior Board determination with respect to the appropriate unit. Plaintiff union filed an appeal with the Board, after which the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., (hereinafter called the Act) became effective prohibiting, § 9(b)(2), the Board from following its former practice of finding proposed craft units inappropriate solely on the basis that a different unit had been established by a prior Board decision. The Board, therefore, ordered a formal hearing to reconsider the appropriate unit. Following this hearing, to which plaintiff union was a party, the Board found that the loomfixers were not craft employees; did not comprise a separate department and because of the long history of collective bargaining in the industry-wide production and maintenance unit, found that the unit sought by the loomfixers was, therefore, inappropriate. 78 N.L.R.B. 319.

At the present time the existing contract covering the textile mill employees of New Bedford is shortly to expire. (March 15, 1953) On January 16, 1953, plaintiff union filed with defendant Alpert, as Regional Director of the Board, a petition requesting certification of plaintiff union as collective bargaining representative for a unit composed of the loomfixers in the New Bedford mills. §§ 9(a) and (c) of the Act. On January 29, 1953, defendant Alpert allegedly without conducting any investigation dismissed the petition on the ground that "the unit of employees set forth in petition is inappropriate for the purposes of collective bargaining." Thereafter (as set forth in the amendment to the complaint) the Board, on February 11, 1953, denied plaintiff union's request for a review of the action of the Regional Director on the ground that in view of the history of bargaining on an association-wide basis and in the absence of craft status of the employees petitioned for the Regional Director properly dismissed the petition.

In the meanwhile, the defendant Regional Director, after a conference with representatives of the C.I.O., the A.F. of L., and the Association in which plaintiff union had no part, fixed February 17, 1953 as the date for a consent collective bargaining election in a unit consisting of all production and maintenance employees of the member mills of the Association. It is alleged that if this election is allowed to be held, irreparable injury will result to the plaintiff union and its members, in that in view of the minority status of the loomfixers they will be unable to influence the results of the election in the designated unit, the successful union will be certified as exclusive bargaining representative for all employees in the unit, binding on the loomfixers, and they will be injured in their property rights by being compelled again to pay dues to a union not of their choice. The union, it is alleged, will be injured by being deprived of its alleged property right to act as bargaining representative of its members. It is alleged that the action of defendants in dismissing plaintiff union's petition without investigation or hearing and in refusing to certify plaintiff union as bargaining representative for a craft unit composed of loomfixers is arbitrary, capricious, and discriminatory, and deprives plaintiffs of their property rights in violation of the Act and without due process of law in violation of the Fifth Amendment of the Constitution of the United States.

Plaintiffs ask that defendants be enjoined from holding the scheduled election on February 17, 1953, or any election, among employees of the New Bedford mills without placing the name of plaintiff union on

the ballot; that defendants be ordered to grant to plaintiff union a hearing on the merits of its petition for certification; that they be ordered to conduct a so-called "Globe election" for the benefit of members of the plaintiff union; and that they be enjoined from certifying any union other than plaintiff union as collective bargaining representative of the loomfixers in the New Bedford mills unless the loomfixers so decide by vote in a "Globe election".

The complaint was filed on February 13, 1953. On February 16, after hearing on plaintiffs' motion for a preliminary injunction, the motion was allowed and a preliminary injunction issued enjoining the Regional Director from holding the scheduled election on February 17. The case has now, on February 25, been more fully argued on defendants' motion to dismiss, and to quash service on the defendant Board.

The procedure for the certification by the Board of exclusive collective bargaining agents, the determination of appropriate bargaining units, and the holding of elections in connection therewith is governed by § 9 of the Act, 29 U.S.C.A., § 159. Section 10 of the Act, 29 U.S.C.A., § 160, sets forth the statutory provisions for judicial review of certain actions of the Board. Similar provisions were found in the corresponding §§ 9 and 10 of the National Labor Relations Act of 1935.

■ The statutory plan set up by § 10 of the Act provides for review of the actions of the Board only in the appropriate court of appeals, by petition of the Board under § 10(e) for enforcement of an order in unfair labor practice cases, or by petition for review under § 10(f) by a person aggrieved by a final order in such cases. No method is provided for the obtaining of any direct review of an action of the Board under § 9, although § 9(d) provides for the filing of the record of an investigation under § 9(c) as part of the record in proceedings under § 10(e) or § 10(f) where the order involved in the § 10 review is based on facts certified under § 9(c). Hence, it has consistently been held that no direct review can be had in the court of appeals of an action of the Board under § 9, and such review can be had in the court of appeals only indirectly, in the course of a § 10 proceeding involving a final order of the Board based in whole or in part on action under § 9. National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347. Congress in creating rights has the power to prescribe the manner in which they may be enforced. Estep v. United States, 327 U.S. 114, 121, 66 S.Ct. 423, 90 L.Ed. 567; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61.

The instant case involves the further question of whether a district court under its general equity powers and in the exercise of its jurisdiction over actions arising under acts of Congress regulating commerce, 28 U.S.C.A. § 1337, has jurisdiction to review in an independent proceeding an action of the Board under § 9 of the Act, determining an appropriate bargaining unit or ordering an election, and to afford injunctive or other relief from such Board action. Did Congress intend, in establishing a plan for review of Board orders by the court of appeals, to limit the jurisdiction which the district court might otherwise possess to intervene in proceedings under § 9 of the Act?

It is clear from the legislative history of the original National Labor Relations Act that Congress had before it the history of the experience under previous legislation where the right to seek direct review on questions of certification had resulted in delays which were regarded as prejudicial to the effective enforcement of the rights created by the statute. It was to eliminate these delays that the 1935 Act originally postponed any review in the court of appeals until such time as the Board had entered a final order in the proceedings before it. See the discussion of this legislative background in Madden v. Brotherhood and Union of Transit Employees of Baltimore, 4 Cir., 147 F.2d 439, 442–444, 158 A.L.R. 1330. To hold that the preliminary proceedings under § 9 were nevertheless open to review by the district court at some stage

before the time at which review could be had under the statutory scheme would be to defeat the Congressional purpose and subject the administration of the Act to the delays which Congress sought to avoid. Hence, it has been many times held that, at least when no substantial constitutional question is raised, the district court has no jurisdiction to review Board actions under § 9(c) or to enjoin elections ordered thereunder by the Board. International Union of Operating Engineers, A. F. of L., Local No. 148 v. International Union of Operating Engineers, A. F. of L., Local No. 2, 8 Cir., 173 F.2d 557, 559; Fitzgerald v. Douds, 2 Cir., 167 F.2d 714. But where the complaint asserted a violation of a constitutional right, it has been held that the district court did have jurisdiction to dispose of all questions which arose in the case. Fay v. Douds, 2 Cir., 172 F.2d 720, 723; cf. Volney Felt Mills, Inc., v. LeBus, 5 Cir., 196 F.2d 497.

In American Federation of Labor v. National Labor Relations Board, supra, the Supreme Court, in dealing with a question of review by the court of appeals, mentioned, without deciding it, the question of whether review might be had in such a case by an independent suit in the district court. In Inland Empire District Council v. Millis, 325 U.S. 697, 700, 65 S.Ct. 1316, 1318, 89 L. Ed. 1877, while affirming dismissal of an action to set aside a certification by the Board, the Supreme Court would not pass upon the question of whether the district court had jurisdiction in the matter,[1] on the ground that no sufficient showing had been made of unlawful action "whether by way of departure from statutory requirements or from those of due process of law." The court did, however, inquire sufficiently into the facts of the case to determine that they did not involve any substantial question of violation of procedural fairness. The Inland Empire case from the latter inquiry does indicate that questions of procedural unfairness may be inquired into by a district court. See West Virginia Law Review, 1951, Vol. 54, No. 1, pp. 41–43.

Plaintiff union relies in pressing its claim on the equity side of the court on its allegations of violation of its constitutional rights as furnishing a basis for the jurisdiction of this court under the doctrine of Fay v. Douds, supra. It argues that the action of the Board abridges its property right to be the exclusive bargaining agent of a unit composed of loomfixers. But the right to be an exclusive bargaining representative stems solely from the provisions of the Act, and not from the Constitution or the common law. As Judge Learned Hand stated in Fay v. Douds, supra, 172 F.2d at page 724: "The privilege * * * is a creature of Congress to whose grant Congress was therefore free to attach such conditions as it saw fit." Congress has conditioned such right, among other factors, on the finding by the Board that the bargaining unit which the union desires to represent is an appropriate one. Here the Board, following statutory requirements, has specifically found that the requested unit is inappropriate.

It is likewise alleged that the Board action interferes with the right of the plaintiff union to receive the dues of its members. So far as the payment of these dues depends on the voluntary action of the individual members, the Board action in no way prevents them from paying these dues if they so wish. Fitzgerald v. Douds, supra, 167 F. 2d at page 718. So far as any alleged loss of dues stems from the fact that the plaintiff union cannot use the position of exclusive bargaining representative to enforce such payment, the claim to a right to collect such dues stands on the same footing with the claim to a right to be such exclusive representative.

Nor do plaintiffs set forth a case for such a denial of due process, through a disregard of the procedural requirements of the Act, as would constitute an arbitrary, capricious and unlawful denial of the plaintiff union's rights under the statute. It argues that there was a failure by the Board to afford a hearing. A hearing is required by § 9(c) of the Act only if the Board de-

---

1. See cases cited on page 699 of 325 U. S., on page 1318 of 65 S.Ct. of Inland Empire case reflecting inferior courts' divided view of the question of jurisdiction.

termines upon investigation of a petition for certification that a question of representation exists. In this case the Board finding was that no such question existed since the bargaining unit requested in the petition was inappropriate. An investigation is, indeed, required by the Act, but it does not appear that the Regional Director did not make an investigation appropriate under the circumstances. No particular form of investigation is prescribed. Inland Empire, supra, 325 U.S. at page 706, 65 S. Ct. at pages 1320, 1321. Also, even if a "hearing"—though not specifically provided for in § 9(c) (1) (B)—is implicit at some stage of an "investigation", there was a full hearing accorded the plaintiff union in 1948, as appears above. The complaint alleges that the period between January 16, 1953, when the petition was filed, and January 29, 1953, when it was denied, was so short as to preclude any proper investigation. The question of the appropriateness of the bargaining unit in question was not before the Board for the first time. It had been thoroughly considered, after full hearing by the Board in 1948, subsequent to the passage of the present Act. The question for investigation on the present petition was essentially whether there had been, since the time of the previous determination, any such change in the status of the employees in question as would warrant a different finding in regard to their position as a craft. The union had full opportunity, at least on its appeal from the Regional Director to the Board, to call to the Board's attention any facts or arguments which would call for a change from the Board's previous determination. In fact a memorandum was submitted to the Board, which considered it before reaching its decision to uphold the dismissal of the petition. There was no departure by the Board from statutory standards. It cannot be held that the alleged action of the Board was merely arbitrary or capricious or that it amounted to such procedural unfairness as would amount to denial of due process.

█ Plaintiff union argues that the Board's action clearly violates the ban of § 9(b) (2) of the Act, providing that a craft unit cannot be held inappropriate on the ground that a different unit has been established by a prior Board determination. This, of course, does not prevent the Board from reaching the same result as it had previously reached when it has substantial basis for the appropriateness of the unit selected other than the fact that it had selected it previously. Mueller Brass Co. v. National Labor Relations Board, 86 U.S. App.D.C. 153, 180 F.2d 402. The finding that a craft unit of loomfixers was inappropriate was made in 1948 subsequent to the passage of § 9(b) (2), after full hearing, and for the reasons set forth by the Board in its opinion, 78 N.L.R.B. 319. Its present decision is a finding that the requested unit is inappropriate not merely because it was previously found inappropriate, but because the facts on which the 1948 decision was based were not shown to have changed so as to make the unit appropriate now which the facts made inappropriate then. There was no violation of the statutory inhibitions contained in § 9(b) (2) of the Act.

Since no showing has been made that the Board has acted unlawfully either by way of departure from statutory standards or in violation of due process, the preliminary injunction heretofore issued will be dissolved and the complaint will be dismissed.