**LOCAL 719, affiliated with INTERNATIONAL PRODUCTION, SERVICE AND SALES EMPLOYEES UNION, Plaintiff,**

v.

**Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, Defendant.**

United States District Court
E. D. New York.
April 22, 1960.

26. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 512–513, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420.

Murray A. Frank, Brooklyn, N. Y., for plaintiff for the Motion.

Samuel M. Kaynard, New York City, Regional Atty., Second Region, by Melvin J. Welles, Washington, D. C., of counsel, In Opposition.

RAYFIEL, District Judge.

The plaintiff sues Ivan C. McLeod, Regional Director of the National Labor Relations Board, hereinafter called the Board, for a permanent injunction restraining him from conducting a representation election among certain employees of one Harold Schoenfeld, doing business as S. & S. Sheet Metal Company, hereinafter called S. & S., the said injunction to be effective "until such time as an election will be appropriate in relation to the expiration of the existing contract between S. & S. and plaintiff."

The Board, by its decision dated January 29, 1960, directed that an election be held, and the plaintiff moved for a preliminary injunction enjoining the defendant, his agents, servants, employees, attorneys, etc., from conducting the same pending the determination of the action, and asked that the election be stayed until the motion for a preliminary injunction had been determined. This Court denied the request for a stay of the election and permitted it to be held, but directed that the ballots cast thereat be impounded until such determination.

The defendant cross-moved to dismiss the complaint on the grounds that

(1) the Court is without jurisdiction of the subject matter of this action,

(2) the complaint fails to state a claim warranting judicial relief, and

(3) this Court lacks jurisdiction over the members of the Board who are indispensable parties to the action.

The plaintiff is the successor of Metal, Plastic, Miscellaneous Sales Novelty and Production Workers, Local No. 222, I. G. W. U., hereinafter called Local 222, which on September 6, 1957 entered into a collective bargaining agreement with S. & S. covering the latter's production, shipping and maintenance workers then or thereafter to be employed by it. That agreement, by its terms, was to remain in full force and effect until August 31, 1959.

On August 13, 1959 International Union of Electrical, Radio and Machine Workers, AFL–CIO, hereinafter called I.U.E., filed its petition with the Board, requesting that a representation election of certain employees of S. & S. be conducted by the Board. At the hearing on said petition the plaintiff claimed that the contract between Local 222, its predecessor, and S. & S. was a bar to such an election.

On January 29, 1960 the Board issued its Decision and Direction of Election, wherein it found, inter alia, that the aforementioned agreement of September 6, 1957 "gave preferential treatment to union members in that certain pay increases under the wage schedule were limited to members of the union and similarly, benefits under the welfare plan were also limited to union members". The bases of the Board's said findings were Articles 6 and 24 of the contract of September 6, 1957.

The plaintiff argues that when, as stated in paragraph 6 of the complaint, it learned in July, 1959 that the said two Articles "might prevent the contract from constituting a bar to an election" if petitions were filed by other unions, it "agreed to amend the contract, so as to eliminate the language deemed" by the Board to be illegal, and on July 14, 1959 entered into an agreement with S. & S. eliminating or modifying the language upon which the Board's decision was grounded. The Board rejected that argument and held, referring to said amendatory agreement of July 14, 1959, "that a subsequent amendment purporting to cure an otherwise invalid contractual provision will not be given the effect of sustaining the contract as a bar," citing Keystone Coat, Apron and Towel Company, et al., 121 N.L.R.B. 880.

In Keystone, supra, which was decided on September 17, 1958, the intervenor claimed that its contract with the employer, which, by its terms, was effective

from November 1, 1955 to October 31, 1958, constituted a bar to the petitioner's proceeding, but the Board held that the contract, which it found to contain a union security clause which did not on its face conform to the requirements of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., could not serve as a bar to an election. Further, it cited as one example, among others, of clauses in contracts which will be deemed to be invalid for contract bar purposes a clause which requires an employer to give a preference on the basis of union membership in hiring, tenure, seniority, wages or other terms and conditions of employment, which appears to be precisely what each of the aforementioned Articles 6 and 24 on its face purports to do.

The plaintiff argues that its agreement with S. & S. was entered into on September 6, 1957, about a year prior to the Keystone decision, and was amended and modified on July 14, 1959, about a month prior to the filing by I.U.E. of its petition for a representation election, and that the Board, by its action, made retroactive application of the change in its contract bar rule, nullified plaintiff's agreement with S. & S., as well as its amendment and modification, and thereby deprived the plaintiff and its members of their property rights without due process of law and without affording the plaintiff an opportunity, as was the Board's rule and practice prior to Keystone, to establish "that the allegedly illegal clauses were inadvertent, and that actually no discrimination existed or was intended."

The case of Leedom v. International Brotherhood of Electrical Workers, Local Union No. 108, AFL–CIO, 278 F.2d 237, decided by the Court of Appeals, District of Columbia Circuit, on March 24, 1960, appears to be clearly in point. This was an appeal from a District Court decision cited by the plaintiff, granting the Union a preliminary injunction restraining the Board from holding a representation election on the petition of an employee not a member of the union which was a party to the then existing contract with the employer. The pertinent facts, in brief, follow. On May 1, 1957 Local No. 108 entered into a three-year collective bargaining agreement with General Cable Corp. covering certain of its employees. The contract-bar rule then in effect provided, under conditions not here relevant, that during the life of a bargaining agreement with a term up to five years no representation proceedings could be instituted by a labor organization not a party to such contract. In September, 1958, some 16 months after said contract was entered into, the Board revised its rules, and announced that a contract would not bar an election after two years, regardless of its terms—see Pacific Coast Ass'n. of Pulp & Paper Mfgs., 121 N.L. R.B. 990.

In June, 1959, some 10 months before the expiration of the contract with General Cable Corp., the Board applied the reduced bar term in a representation proceeding instituted by an employee of General Cable, and ordered an election to be held. The District Court, on application of Local No. 108, issued a temporary order which permitted the election to be held, but directed that the uncounted ballots be impounded in the custody of the Board, pending the determination of the action. After a hearing the District Court granted a preliminary injunction because the action of the Board "amounted to a retroactive application of new policy * * * and as such constituted an abuse of discretion and therefore amounted to a deprivation of property without due process of law".

The Court of Appeals, in reversing the District Court, said: "The Union claims here, as it did below, that the retroactive application of the shortened contract bar term violates the requirement of due process. We are constrained to hold that it does not." While Circuit Judge Bazelon, the writer of the opinion stated that he reached that conclusion with considerable difficulty, in part because of the historical antipathy to retroactive law making by legislatures and courts, he went on to say: "It is only by comparing the problem of retroactivity in those areas with the comparatively new area of

administrative law that I am able to find special considerations which adequately support our conclusion. * * * The vice inherent in retroactivity is, of course, that it tends to destroy predictability and to undercut reliance—both important aims of the law."

"But in most areas of law, the need for predictability must compete with the need for change. Thus in reviewing legislation of retroactive effect, the virtues of stability must be balanced with the benefits of progress. Accordingly courts have often upheld statutes which cut off or modified private contracts where it appeared that the legislation sought to attain social purposes of greater importance than predictability and reliance. Indeed the modern trend is to scrutinize more and more carefully the substance of the 'vested rights' which have often been asserted in condemnation of retroactive legislation."

The Supreme Court dealt with the problem of retroactivity in the field of administrative law in the case of Securities and Exchange Commission v. Chenery Corporation, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995. There the Commission had developed and applied a new rule of fiduciary responsibility respecting corporate reorganizations. The Court said, 332 U.S. at page 202, 67 S.Ct. at page 1580, that an administrative body "does have the ability to make new law prospectively through the exercise of its rule-making powers," and, 332 U.S. at page 203, 67 S.Ct. at page 1581, respecting the announcement and application by the Commission of the new standard of conduct, and the fact that the same might have a retroactive effect, that that "was not necessarily fatal to its validity * * *. But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by the law." See Addison v. Holly Hill Fruit Products, 322 U.S. 607, 620, and at page 622, 64 S.Ct. 1215, at page 1223, 88 L.Ed. 1488, where the Court said, "The petition for rehearing claimed that our decision involved retroactivity. * * So it did. But as against retroactivity we balanced the considerations that made retroactivity seem the lesser evil."

In Leedom v. International Brotherhood of Electrical Workers, Local Union No. 108, AFL–CIO, supra, the Union contended, as the plaintiff may well contend here, that it entered into its contract in reliance upon the former contract bar rules, that a premature election threatens to deprive it of its contractual right to continued peaceful recognition, and will put it to the expense of an otherwise unnecessary organizational campaign. The Board did not deny those claims, but argues that periodic adjustments in its contract bar rules are necessary to maintain, at all times, a proper balance between the competing statutory objectives of (1) stability in industrial relations, and (2) employee freedom of choice in selecting their bargaining representatives, and, also, that the Union was on notice not to rely upon the earlier bar, since its history demonstrates that it is subject to modification, which, it appears, has occurred on five occasions since the establishment of the Board. The Court said "In weighing these opposing claims, we think the balance falls in favor of the Board. Congress relied on the Board's expertise to harmonize the competing goals of industrial stability and employee freedom of choice to best achieve the ultimate purposes of the Act. Thus, when the Board exercises this discretion in determining that a shorter contract bar rule is now necessary, its judgment is entitled to great weight. While the Union does not challenge the Board's authority to prescribe a shorter bar for the future, it vigorously contends that retroactive application is capricious. But against this the Board pits two considerations: (1) to apply the bar in futuro would, in some cases, preclude the Board from putting its new policies fully into effect for as long as five years from the date the change was announced; (2)

simultaneous administration of the new and old rules would create an 'administrative monstrosity.' * * * Here in the nature of the problem the Board could not promulgate these rules prospectively without having to wait up to five years to put its new policies into full effect. This drag on the administrative process would tend to destroy its flexibility.

"Administrative flexibility is, after all, one of the principal reasons for the establishment of the regulatory agencies. It permits valuable experimentation and allows administrative policies to reflect changing policy views.

"The jurisdiction of the District Court does not depend on whether the Board's retroactive application of the shortened bar term is wise—but whether the requirements of constitutional due process preclude the Board from determining that the considerations of orderly procedure and administrative flexibility outweigh the disadvantages to the Union by way of the expense and turmoil of an election and the possibility of losing its representation rights. We hold that the Board is not so precluded."

#### As to the Defendant's Contention that This Court Is Without Jurisdiction.

Chief Judge Ryan of the United States District Court for the Southern District of New York discussed this question fully in the case of White v. Douds, D.C., 80 F.Supp. 402, when he said at page 406, "[7] Congress intended to leave representation matters entirely to the Board except as provided in Section 9(d) (E.G.H.Rep. No. 573, 74th Cong., 1st Sess., p. 14; H.Rep.No.410, 80th Cong., 1st Sess., pp. 56–57). It has been uniformly held that, absent constitutional questions, district courts do not have jurisdiction to review Board action with respect to representation matters under Section 9 of the Act, even when they involve problems of statutory construction. Fitzgerald v. Douds, supra; Madden v. Brotherhood, 4 Cir., 147 F.2d 439, 158 A.L.R. 1330; Millis v. Inland

Empire District Council, 79 U.S.App.D.C. 214, 144 F.2d 539; A.F.L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Cf. Switchmen's Union v. National Mediation Board, supra."

The motion is in all respects denied and the impounded ballots may now be counted.

Settle order on notice.