Donald Peters et al., Plaintiffs-Appellees, v. South Chicago Community Hospital, et al., Defendants-Appellants,

and

Donald Peters, et al., Plaintiffs-Appellees, v. Norwegian-American Hospital, et al., Defendants-Appellants.

Gen. Nos. 52,028, 52,029. (Consolidated.)

First District, Third Division.

February 1, 1968.

Robert W. MacDonald, William B. Hanley, and Murray B. Woolley, of Chicago (MacDonald & Hanley and Elmer E. Abrahamson, of counsel), for appellants.

Stuart Bernstein, Arthur J. Kowitt, and William A. Gordon, of Chicago (Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of counsel), for amici curiae, the Chicago Hospital Council and the Illinois Hospital Association.

Melvin L. Rosenbloom, of Chicago (Asher, Greenfield, Gubbins and Segall, of Chicago), for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from interlocutory orders taken under Supreme Court Rule 307. The trial court granted temporary injunctions on the pleadings. Plaintiffs are the officers of the Hospital Employees Labor Program (HELP), a voluntary unincorporated association commonly known as a labor union. They brought two separate class actions, on behalf of themselves and the members of the union, for injunctions against the defendant hospitals to restrain the latter from intimidating and/or coercing their respective employees in regard to union membership, and to compel the hospitals to meet with the union representatives for the purpose of negotiating and entering into a collective bargaining agreement. The defendants filed motions to dismiss the complaints.

The hospitals also filed petitions for declaratory judgment and injunction. They prayed for declarations that the plaintiffs have no right to strike or picket the hospitals and that defendants have no obligation to recognize or bargain collectively with plaintiffs and for orders restraining plaintiffs from striking or picketing the defendants. Plaintiffs filed motions to dismiss the hospitals' petitions for declaratory judgment and injunction. The facts and prayers for relief in the complaints in the two cases are virtually identical and defendants filed identical motions to dismiss. The trial judge issued the same order in both cases, duplicate appeals were taken, and the cases were consolidated for hearing on appeal.

The matter was presented to the trial court on the motions to strike the complaints and petitions for declaratory judgment, and the only hearing held was oral argument on the questions of law presented thereby. No testimony of witnesses was taken. The court entered orders, the following parts of which were appealed from by defendants:

"WHEREFORE, IT IS ORDERED BY THE COURT:

38

"1. That a writ of temporary injunction be issued herein, by the Clerk and under seal of the Court, restraining, enjoining and requiring the parties and their agents, as follows:

"A. The parties shall meet forthwith for the purpose of selecting an impartial person or agency to supervise and conduct an election to determine whether a majority of the employees of defendant employed in the following capacities desire to be represented by plaintiffs for collective bargaining purposes and the parties shall participate in such an election:

"Licensed practical nurses, nurses aides, orderlies, ward clerical employees, assistant unit managers, laboratory attendants, medical and x-ray technicians, occupational, inhalation and physical therapists, pharmacy helpers and employees in the housekeeping, maintenance and food service departments.

"B. The parties have an equal right to communicate with the said employees of defendant to attempt to persuade them to join to support the Union or vote in favor of collective representation by plaintiffs or to refrain from so doing.

"C. The parties shall not intimidate or coerce said employees in any manner or by any means whatsoever in connection with their right to join or support the Union or to vote in favor of collective representation by plaintiffs or to refrain from so doing.

. . . . . .

"E. All until the further order of this Court.

. . . . . .

39

"4. Defendants' motion to dismiss the Complaint be and the same is hereby denied."

Pursuant to the hospitals' petitions for declaratory judgment and injunction, the court also ordered that, pending further order of the court, plaintiffs "shall not engage in or authorize picketing or a strike of the hospital premises involved herein." No appeal was taken from that part of the order by the defendant in either case, nor did plaintiffs cross-appeal.

The facts giving rise to this cause of action are set forth in the pleadings. HELP is a union formed and sponsored jointly by the General Service Employees Union, Local 73, Building Service Employees International Union, and Local 743, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The individual plaintiffs are the president and secretary of HELP and are officers and representatives of the sponsoring locals. The defendants are hospitals chartered under the Illinois General Not-For-Profit Corporation Act.

The union alleged that the majority of the employees of each hospital have authorized the union to represent them in matters pertaining to employment. There is a conflict in the record regarding the number of employees of each hospital. This appears to be due to the singling out by the union certain job classifications to be in the bargaining unit and the inclusion of all nonsupervisory and nonadministrative employees by the hospitals. On December 14, 1966, the union sent letters to the hospitals requesting that the hospitals meet with the union to engage in collective bargaining with respect to all matters concerning the employment of the designated employees. The hospitals sent letters to the union advising the latter that it was the hospital policy not to recognize any form of unionism or employee representation. The union further alleged that the hospitals intimidated and coerced the

employees to repudiate the union as their representative and threatened economic reprisals, but also granted unilateral substantial pay raises and other benefits to the employees.

■ The main issue presented here is whether a union has the right to demand or secure recognition by a not-for-profit hospital employer.

Defendants point out that there is no national labor law or Illinois labor law establishing union or employees' rights to recognition by not-for-profit hospital employers. Section 2 of the National Labor Relations Act as amended in 1947, provides in part:

> "(2) The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual. . . ." (29 USCA § 152(2).)

Illinois has no state labor law and plaintiffs' rights, if any, must be found in the common law.

Commonwealth v. Hunt, 45 Mass 111 (1842) was a landmark case that held that employees have the right to organize or join a labor union of their own choosing. However, it is the defendants' position that such right does not include a corresponding obligation on the part of the employer to engage in collective bargaining nor does it impose any duty on the employer to recognize the union or negotiate with it.

In Fay v. Douds, 172 F2d 720, 724, Judge Learned Hand stated:

> "The privilege of becoming an 'exclusive bargaining' agent is altogether distinct from the common-law right of workmen to combine; it is a creature of Congress to whose grant Congress was therefore free to attach such conditions as it saw fit."

41

It is to be noted that Congress, in enacting a federal labor law saw fit to exempt not-for-profit hospitals. In New Bedford Loomfixers' Union v. Alpert, 110 F Supp 723, the union claimed to have a property right to become an exclusive bargaining unit. The court rejected that claim and said on page 727: "But the right to be an exclusive bargaining representative stems solely from the provisions of the Act (National Labor Relations) and not from the Constitution or the common law."

The plaintiffs refer us to NLRB v. Jones and Laughlin Steel Corp., 301 US 1, wherein the United States Supreme Court, in discussing the constitutionality of the NLRA said on page 33:

> "Thus, in its present application, the statute goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer.
>
> "That is a fundamental right. Employees have as clear a right to organize and select their representatives for lawful purposes as the respondent has to organize its business and select its own officers and agents."

The court stressed the importance of the employees right to organize and made it clear that the federal statute merely guarded that right. However, the court did not say that the employees had the fundamental right to force the employer to engage in collective bargaining; rather it said that such might be one of the lawful purposes for which the employees gathered into the union groups. It can thus be stated that the employees' right to form or join unions differs from a duty on employers to recognize that group or to enter into negotiations therewith.

Correlative to the defendants' proposition that there is no existing constitutional or legislative grant of the right of employees to engage in collective bargaining is their contention that the courts may not fill that void by judicial legislation on the subject of employer-employee relationships.

Quinn v. Buchanan (Mo), 298 SW2d 413 (1957) was a Missouri case wherein the union was denied injunctive relief to require the employer, an intrastate meat processor, packer and wholesaler, to recognize and bargain with the union. The state constitution provided that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." On a motion for rehearing or to modify, the court, per curiam, stated on page 420:

"Plaintiffs' further argument concerning the right to compel an employer to bargain overlooks the fact that Sec 29, Art I of our Constitution, VAMS, does not purport to *require* collective bargaining by either employees or employers. The right it gives to employees is the right to organize for the purpose of collective bargaining through representatives of their own choosing. City of Springfield v. Clouse, 356 Mo 1239, 206 SW2d 539, 543. Whether or not employers and organized employees can bargain or reach an agreement depends upon the willingness of both just as in the case of bargaining for any kind of contract between other persons who have the right to make contracts. Perhaps modern industrial conditions make desirable more than that for best labor relations but that is a matter for the Legislature."

In Quill v. Eisenhower, 5 Misc2d 431, 113 NYS2d 887 (1952), the court interpreted a similar state constitutional provision and, in denying the union the right to force the employer to negotiate, said on page 889:

43

"It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own choosing does not cast upon all employers a correlative obligation. The constitutional provision was shaped as a shield; the union seeks to use it as a sword. . . .

"The constitutional provision was intended to protect employees against legislation or acts which would prevent or interfere with their organization and choice of representatives for the purpose of bargaining collectively."

Plaintiffs rely on Johnson v. Christ Hospital, 84 NJ Super 541, 202 A2d 874, a New Jersey case, wherein the court reached a conclusion, as to the meaning of that state's constitutional guarantee of employees' rights, contrary to that of Quill, and Quinn, supra. The Johnson court relied on the transcript of the Constitutional Convention and held that the court in the Quinn case misplaced its reliance on the Quill case since New York had a labor relations code that exempted certain employers from the duty of bargaining collectively with the representatives chosen by their employees. The Johnson court evidently felt that a constitutional amendment could not impose duties on those employers exempted by prior legislative action. However, the New York constitutional provision was worded in terms of all nongovernmental employees and had no words imposing a correlative duty on the employers. Furthermore, it should be noted that Illinois has no similar constitutional nor statutory provision setting forth the rights of employees, and, even in the Johnson case, the court realized that any rights of the employees had originated in the constitutional provision, not in the common law. If this were not true and the right were a

fundamental or innate one, the prior labor code in New York could not have validly exempted certain employers.

■ Courts may not formulate labor rules or policies when the legislature has failed to do so. The consequences of such action would be far reaching indeed and would convert our courts into labor boards sitting to settle any dispute that arose between the employees' representatives and the employer. In Nutter v. Pacific Elec. Ry. Co., 2 CCH Lab Cas, par 18,748, the court stated:

> ". . . there is nothing there or elsewhere in the Labor Code to indicate that the Legislature intended to empower the court to issue a mandatory order directing an employer to bargain collectively with his employees or to bargain with any particular agent of such employees.

> "The Legislature has not established any Board in this State with power to conduct hearings, to hold elections, or to make findings of fact, such as are provided for in the National Labor Relations Act, the Railway Labor Act, and the Labor Relations Acts of the States in which such statutes have been adopted, nor has it vested such powers in the courts.

> "Courts at times have legislated to cure defects or to supply manifest omissions in statutes in order to give effect to the plain intent of the legislative body, where, in the absence of such judicial legislation, the statute would be without efficacy in the accomplishment of its contemplated purpose. In so doing courts should act with caution and deliberation.

> " 'To hold that the court is vested with the power asserted by plaintiffs would not be interstitial legislation by the court supplying accidental omissions, but would be judicial legislation ab initio. It would

45

be necessary for the court to constitute itself in essence a Labor Board and to formulize its own procedure for bringing the parties before the court for conducting a hearing in order to ascertain and declare their rights, and for the enforcement of the order of judgment.' "

The court in the instant case took upon itself the burden of legislating rights and duties of the parties in the field of labor relations. The absence of any statutory or common law duty on the part of the hospitals to engage in collective bargaining with the representatives chosen by their employees negates, as well, any requirement of their participation in negotiations regarding the employees' desire to join a union, or any other question of representation. The court clearly exceeded the scope of judicial authority.

Defendants assert that, as a matter of public policy and public interest, the not-for-profit hospitals are exempt from the usual industrial union-management relationship. Because we have determined that the trial court overstepped its authority in ordering the hospitals to enter into negotiations with the union concerning the holding of an election to determine the employees' desire for union representation and collective bargaining, we need not consider this point.

Those parts of the orders from which appeals have been taken as aforesaid are reversed and the causes are remanded with directions to proceed in a manner not inconsistent with the views expressed herein.

Reversed and remanded.

DEMPSEY, P. J. and SCHWARTZ, J., concur.