The MAXWELL COMPANY, Petitioner

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Truck Drivers Union Local 413, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor.

No. 17936.

United States Court of Appeals Sixth Circuit.

June 13, 1969.

As Amended July 11, 1969.

As Amended Aug. 4, 1969.

Kenneth B. Bassett and Paul R. Moran, Cincinnati, Ohio, for petitioner, Charles F. Hartsock, Cincinnati, Ohio, on brief.

Clarice R. W. Feldman, N.L.R.B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N.L.R.B., Washington, D. C., on brief.

Before PHILLIPS and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

The Maxwell Company filed a petition to review and set aside the decision and order of the National Labor Relations Board reported at 164 N.L.R.B. No. 97. The Board cross-petitioned for enforcement.

The facts are set forth in the reported decision of the Board and its Trial Examiner and in the comprehensive dissenting opinion prepared by Judge McAllister and will not be repeated here in detail.

In a ruling [1] dated May 14, 1962, on the Union's petition for an election the Regional Director after an *ex parte* investigation held that the proposed unit was inappropriate for the purposes of collective bargaining, inasmuch as it was

---

1. The complete text of the ruling of the Regional Director is quoted in the opinion of Judge McAllister.

composed of independent contractors not included within the definition of employees as defined in § 2(3) of the Act as amended in 1947, 29 U.S.C. § 152(3). No appeal was taken by the Union from that ruling.

In the present unfair labor practices case the Board ruled diametrically contrary to the earlier decision of the Regional Director and issued an order requiring Maxwell among other things to bargain with the Union as representative of the appropriate unit.

A central question raised by Maxwell is whether the 1962 decision of the Regional Director was a final and binding adjudication that cannot be relitigated by the Board. Maxwell contends that it is deprived of due process of law under the Fifth Amendment when it is denied the right to rely upon the previous decision of the Regional Director involving the same issues and parties, until such decision is either reversed or redetermined.

■ The Board asserts that what is basically at issue is the right of an administrative agency to change a policy decision in an area of discretion squarely committed to it by Congress and to apply the new policy to parties to which the old policy previously had been applied.

The right to make such changes is essential. Without it agency law could never be improved as a result of experience but would be burdened forever with its encrusted errors. Without the right to make changes agency law could not adjust to varying social and economic conditions or to the impact of the continuing technological revolution.

■ We reject the contention that the decision of the Regional Director is a final and binding adjudication which cannot be relitigated. Neither the Fifth Amendment nor the principles of res judicata and equitable estoppel preclude the Board from reaching a decision in a later proceeding contrary to the 1962 ruling of the Regional Director.

"Whatever may be the effect of quasi-judicial determinations of administrative agencies (Cf. Arizona Grocery Co. v. Atchison, etc., R. Co., 284 U.S. 370, 389, 52 S.Ct. 183, 76 L.Ed. 348), it is well settled that the principle of res adjudicata has no application to their exercise of other powers. 30 Am.Jur. p. 930; Pearson v. Williams, 202 U.S. 281, 26 S.Ct. 608, 50 L.Ed. 1029; Tagg Bros. & Moorehead v. United States, 280 U.S. 420, 445, 50 S.Ct. 220, 74 L.Ed. 524; State Corp. Comm. v. Wichita Gas Co., 290 U.S. 561, 569, 54 S.Ct. 321, 78 L.Ed. 500; St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 64, 56 S.Ct. 720, 80 L.Ed. 1033. An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past. Cf. Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 145, 60 S.Ct. 437, 84 L.Ed. 656; Houghton v. Payne, 194 U.S. 88, 100, 24 S.Ct. 590, 48 L.Ed. 888. Nor can the principles of equitable estoppel be applied to deprive the public of the protection of a statute because of mistaken action or lack of action on the part of public officials. United States v. San Francisco, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. City of Greenville, 4 Cir., 118 F.2d 963, 966." National Labor Relations Board v. Baltimore Transit Co., 140 F.2d 51, 54–55 (4th Cir.), cert. denied, 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084. See Talavera v. Pederson, 334 F.2d 52, 57 (6th Cir.).

Although we recognize the authority of the Board to make a redetermination of the 1962 decision of the Regional Director, we deny enforcement of the bargaining order in the present case on the ground that there is not substantial evi-

dence to support the findings of violations of § 8(a) (1) and (3).[2]

The unit which the Union demanded to represent was not the same as the appropriate unit determined by the Board. The original demand for recognition included multiple owner-drivers as a part of the unit. The Trial Examiner and Board held that the multiple owner-drivers are supervisors and are not to be included in the bargaining unit.

The initial demand of the Union for recognition was made upon the Company's president by telephone at his home on Sunday, February 27, 1966. When the President refused in this telephone conversation to recognize the Union as bargaining representative, the strike was called by the Union that day. John Ward, the business representative of the Union who made this telephone call to the Company president, admitted that at the time he made the demand and called the strike he was aware of the 1962 decision of the Regional Director that the unit "is inappropriate for purposes of collective bargaining, inasmuch as it is composed of persons who are independent contractors not included within the definition of employees. * * *"

On March 18, 1966, the Union wrote a letter making formal demand for recognition. On March 29, 1966, the Company wrote the following letter declining to recognize the Union as bargaining agent:

                                  March 29, 1966

Mr. Mit Duncan
Truck Drivers Union
 Local No. 13
233 South High Street
Columbus, Ohio 43215
Dear Mr. Duncan:

This will acknowledge receipt of your letter dated March 18, 1966, which we received March 23, 1966, in which you advised that you were requesting recognition of your Local Union as the bargaining agent for truck drivers employed by us.

We desire to advise you that the truck drivers referred to in your letter are not employees of The Maxwell Co. These men were, in fact, independent contractors, each having a separate contractual arrangement with The Maxwell Co. By reason of certain action taken by these independent contractors, with which you are familiar, The Maxwell Co. has terminated the contractual relationship.

Since the drivers referred to in your letter are not employees of The Maxwell Co., we are not able, nor could we properly recognize your Union as bargaining agent for these men.

Very truly yours,

THE MAXWELL CO.

T. L. Maxwell

President

This letter reflects the position taken by Maxwell throughout these proceedings. We find nothing in the record to indicate that this contention was not made in good faith.

It is to be emphasized that the Trial Examiner expressly found:

" * * * Respondent asserts, and I find, that the unit which the Union now claims to represent is identical with that involved in the 1962 case, and that since then there has been no material change in the nature of Respondent's dealings with the drivers."

The Board contends that its decision in Deaton Truck Lines Inc., 143 N.L.R.B. 1372 (1963), petition to review dismissed, 337 F.2d 697 (1964), cert. denied sub nom. Teamsters, Chauffeurs, Warehousemen and Helpers Local Union 612 v. N.L.R.B., 381 U.S. 903, 85 S.Ct. 1448, 14 L. Ed.2d 285, represented a clear-cut announcement of a change in policy which placed Maxwell on notice of the change. We find ourselves unable to agree with the proposition that Deaton was a clear warning to Maxwell from which Maxwell should have known with reasonable certainty that the underpinning of the 1962 decision of the Regional Director

2. The Trial Examiner found a § 8(a) (5) violation but the Board dismissed this charge.

relating to its bargaining unit problem had been removed.

Although Board decisions after the 1947 amendment reflected changes in the interpretation of the common law control test in relation to what constitutes an employee as contrasted with an independent contractor, we do not find that *Deaton* purported to announce any new policy. This and other decisions of the Board reflect an evaluation of fact patterns rather than a clear-cut change in policy. Cf. Reisch Trucking and Transportation Co., 143 N.L.R.B. 953 (1963). Following the 1947 amendment, 29 U.S.C. § 152(3), Board decisions seem to have been concerned primarily with applying the provisions of this amendment under the facts involved in particular cases.

The following cases (by no means a complete list) illustrate the fact that different results achieved by a majority of the Board have represented an application of the same general principles to somewhat (but not very dramatically) different fact situations. *See, e.g.,* Eldon Miller, Inc., 103 N.L.R.B. 1627 (1953) (truck drivers held employees); Malone Freight Lines, Inc., 106 N.L.R.B. 1107 (1953) (truck drivers held independent contractors); Hugh Major Truck Service, 124 N.L.R.B. 1387 (1959) (truck drivers held independent contractors); Reisch Trucking and Transportation Co., 143 N.L.R.B. 953 (1963) (truck drivers held independent contractors); Chemical Leaman Tank Lines, Inc., 146 N.L.R.B. 148 (1964) (truck drivers held employees); Indiana Refrigerator Lines, Inc., 157 N.L.R.B. 539 (1966) (truck drivers held employees).

We find no decision of the Board prior to its ruling in the present proceeding that is sufficient to put Maxwell on notice of a clear-cut change of Board policy relating to the industry as a whole or to Maxwell's own bargaining situation.

█ The Board issued its bargaining order on the basis of violations of §§ 8(a) (1) and 8(a) (3). The Trial Examiner found that Maxwell in refusing to recognize the Union "was motivated at least in part by a rejection of the principle of collective bargaining," and that the Company's refusal to bargain with the Union "was motivated basically by an antipathy to collective bargaining, and by the hope that, by postponing the issue, respondent would be afforded an opportunity to undermine the drivers' adherence to the Union." The Board found that the Company "had completely rejected the collective bargaining principle and its violations could only have the effect of destroying conditions needed for a fair election." We do not find evidence to sustain these conclusions and are of the view that they are not supported by substantial evidence on the record considered as a whole. This Court's decision in N.L.R.B. v. Delight Bakery, Inc., 353 F.2d 344 (6th Cir.), therefore is not controlling.

██ We find that the Board's determination of the appropriate bargaining unit is supported by substantial evidence and is consistent with the law. On the facts in this record, however, the determinations in this case must be prospective from May 27, 1967, the date of the Board's decision, and not retroactive.

█ We hold that substantial evidence on the record as a whole does not support the findings of §§ 8(a) (1) and 8(a) (3) violations by Maxwell under the unique facts of this case.

█ There is substantial evidence on this record as a whole to support the following findings of the Board as they apply to the future:

"1. The Trial Examiner found, and we agree, that the single-owner drivers and the drivers who operate vehicles owned by others are employees of the Respondent, rather than independent contractors or employees of independent contractors. * * *

"2. Since we have found the drivers to be employees, we also adopt the Trial Examiner's conclusion that the unit sought by the Union, consisting of all employee drivers operating from respondent's Ironton, Ohio, terminal, is appropriate."

We conclude, however, that under the NLRA and established Board procedure[3] these findings do not constitute a basis for enforcement of any part of the present order of the Board. Enforcement therefore is denied.

Petitioner will recover its costs from the Board in accordance with Rule 39(b), Fed.R.App.P.

Judge McAllister would deny enforcement for the reasons stated in his dissenting opinion.

McALLISTER, Senior Circuit Judge (dissenting).

In view of the delays incident to the disposition of this complex case, and because of the repeated recasting of this opinion as the result of conferences and the submission of other proposed opinions, and in order to avoid the additional delay of completely rewriting it, in light of the opinion now prevailing, it is, with the resulting imperfections, now submitted as a dissent.

The Maxwell Company filed a petition to review and set aside the decision and order of the National Labor Relations Board holding that it had violated Sections 8(a) (1) and (3) of the Act (29 U.S.C.A. Sec. 158(a) (1) and (3)) and ordering it to reinstate employees that had been the victims of discrimination and make them whole for any losses suffered as a result of the termination of their employment.

From the record, we abstract the following factual background.

The Maxwell Company is an Ohio corporation with its principal office at 10380 Evendale Drive, Cincinnati, Ohio. The Company is a common carrier engaged in the transportation of steel and steel products between Ashland, Kentucky; Huntington, West Virginia, and Middletown, Ohio, on the one hand and, on the other, between points in Ohio and Eastern Kentucky. For this phase of its business, the Company rents a one-room office in Ironton, Lawrence County, Ohio. It has no employees at Ironton except an office manager, Mr. Louis Gable, and a clerk typist, Mrs. Alberta Moore.

The steel products transported in this operation are hauled to and from the points hereinabove referred to by owner operators, their respective driver employees and employees engaged by equipment owners. The tractors and tractor trailers utilized in this operation are owned exclusively by owner operators and third-party equipment owners, who do not drive but employ others to drive for them. In each case, the equipment owner entered into a lease agreement with The Maxwell Company and either operated the equipment pursuant to this lease agreement as an owner-operator, or employed drivers to operate the equipment on behalf of the equipment owner.

It appears that as long ago as April 25, 1962, the Truck Drivers Union, Local 413, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter called the "Union," as representative of the "haulers," filed a petition for an election among the Company's "truck drivers." Following an *ex parte* investigation, the Reginal Director of the National Labor Relations Board dismissed the petition on the ground that the unit sought was inappropriate because it was "composed of persons who are independent contractors not included within the definition of employees as defined by Section 2(3) of the Act." No appeal was ever taken from this ruling by the Union or any of the parties that it represented.

Early in 1965 the Union launched a new organizational drive among the drivers of the leased equipment, including the owner-drivers, and, on August 9, 1965, the Union, by a letter, notified the Company that the Union had been designated by a majority of the Company's "steel haulers" and requested recognition. Four days later, the Company rejected

---

3. N. L. R. B. v. Checker Cab Co., 367 F.2d 692 (6th Cir.), cert. denied, 385 U.S. 1008 [87 S.Ct. 715, 17 L.Ed.2d 546].

this request, asserting that the "steel haulers" were not its employees but independent contractors, and that there had been no change in its relationship to these individuals since the Regional Director's 1962 ruling that the unit sought was inappropriate as a bargaining unit because it was composed of persons who were independent contractors not included within the definition of employees as defined by the Act.

There were no further contacts between the Company and the Union until February 27, 1966. At that time the relations of The Maxwell Company with the haulers were reflected in seven (7) lease agreements with owners-operators who drove their own equipment; three (3) multiple-owner-operators who had leased two pieces of equipment to The Maxwell Company and employed an additional driver, or drivers, to operate the leased equipment that they, themselves, did not drive, and five (5) equipment owners, who, themselves did not drive the equipment but employed fourteen (14) drivers to drive the equipment on their behalf. On the date above mentioned, February 27, 1966, Mr. John Ward, the Business Agent of Local 413, telephoned Mr. Thomas Maxwell, President of The Maxwell Company, from Ironton, Ohio, demanding recognition on behalf of Local 413 and proposing negotiations. Mr. Maxwell advised Mr. Ward that he was unacquainted with him but suggested that he contact Mr. Dale Mann, President of Local 413, who was fully aware of the relationship of The Maxwell Company and the equipment drivers. Immediately after this telephone call, the Union called a strike of all of the drivers, and of all lessors, and drivers either picketed or respected the picket line at the Company's dispatching office in Ironton.

Prior to the telephone call from Mr. Ward to Mr. Maxwell on Sunday, February 27, 1966, approximately twenty (20) trucks under lease with The Maxwell Company had accepted delivery of steel valued at $200,000 on behalf of The Maxwell Company, a common carrier, from the Armco Steel Company, as consignor, which steel was then on route to various consignees located throughout the State of Ohio. Despite the request of The Maxwell Company, the drivers of these trucks, acting pursuant to instructions from Mr. Ward, refused to deliver the steel or to return it to the Armco Steel Company for a period of at least three days. Finally, as a result of letters sent to the equipment owners by The Maxwell Company, the owners caused the steel on their trucks to be returned to the point of origin at the Armco Steel Company. On March 8, 1966, The Maxwell Company addressed a letter to all equipment owners advising them that their respective leases would be cancelled if their equipment was not made available, in accordance with their lease agreement, by March 10, 1966. The equipment was not made available on that date and, as a result, all of the leases were terminated. The Union adherents continued picketing the Company; and on March 18, 1966, the Company filed a suit in the Common Pleas Court of Lawrence County, Ohio, to enjoin the picketing.

On March 21, 1966, shortly after the Company filed its injunctive action in the State Court, the Union filed a representation petition with the National Labor Relations Board, and on March 23, The Maxwell Company received a letter from Local 413, requesting that the Company recognize that local Union as the exclusive bargaining agent for all truck drivers at Ironton, Ohio. This was the first official demand for recognition made by Local 413 since August 1965. The Company replied to this letter and again advised the Union of the previous representation decision where it had been held that the truck drivers in question were not employees as defined by the Act.

On April 1, 1966, the Court of Common Pleas of Lawrence County, Ohio, rendered its decision in the injunction suit and found that the owner-operators and equipment drivers were not employees of The Maxwell Company; and the court granted a temporary injunction to The

Maxwell Company against picketing by the owner-operators, their driver employees and members of Local Union 413.

On April 4, 1966, Mr. Ward called Mr. Maxwell and requested that the Company do business with the owner-operators who had breached their contracts. Mr. Maxwell advised Business Agent Ward that, due to an Armco Steel strike, there was no steel to be hauled and that if the Company secured their business in the future, it would enter into new lease agreements with the equipment owners.

After the termination of the Armco Steel strike, The Maxwell Company entered into new lease agreements with certain of the equipment owners as soon as work became available. Of the fifteen (15) owners who had leases with The Maxwell Company all, with the exception of five (5), entered into new lease agreements with The Maxwell Company, and the five (5) who did not enter into new lease agreements, namely, Henry Howard, a multiple-owner-operator; Thomas Mathes, an owner-operator; Cletus Adkins, an owner-operator; John Ledford, a multiple-owner-operator, and Amos Mathes, a non-driver equipment owner, never requested a new lease with The Maxwell Company.

On April 27, 1966, Local Union 413 filed a charge with the National Labor Relations Board alleging that The Maxwell Company had engaged in an unfair labor practice within the meaning of Section 8(a) (1), (3) and (5) of the Act. (29 U.S.C.A. Sec. 158(a) (1), (3) and (5)).

On the hearing of the aforementioned charge, the National Labor Relations Board held that the driver-owners and their employees were employees of Maxwell; that the driver-owners with employees who operate other equipment were supervisors; that the relationship was that of employer-employee and not that of independent contractor; and that Maxwell was guilty of violating Section 8(a) (1) and (3) of the Act; and an order was issued requiring Maxwell to bargain with the Union and to reinstate the fourteen "employees" with back pay.

Maxwell contended that it relied in good faith on the 1962 ruling of the Regional Director that the driver-owners and their employees were independent contractors or the employees of independent contractors, and that the decision of the Regional Director of the National Labor Relations Board on May 14, 1962, setting forth that the petition for certification of the Union was carefully investigated and that further proceedings were unwarranted because the unit described in the petition was inappropriate for the purposes of collective bargaining since it was composed of persons who were independent contractors not included within the definition of employees as defined by Section 2(3) of the Act, was a binding decision.

The Maxwell Company relies upon the dismissal of the representative petition by the Regional Director and his notification in 1962 to Local Union 413 of its rights to obtain review of this action before the National Labor Relations Board in Washington; and the Company contends that the failure of the Union to appeal from this decision or exercise any right of review, as set forth in the Regional Director's letter of dismissal, precluded the Union from filing a charge alleging that The Maxwell Company was engaged in an unfair labor practice on the ground that the parties who had theretofore been held independent contractors, were actually employees of the Company, and precluded the Board from so holding in its order which it here seeks to enforce.

No case is cited where the Board has ruled diametrically contrary to an earlier unappealed decision of its Regional Director involving the same parties and the identical set of facts.

Counsel for The Maxwell Company and for the National Labor Relations Board, as well as the Trial Examiner in this case whose decision was affirmed by the Board, all agree that the question here presented is one of first impression.

We set forth, then, the decision of the Regional Director upon which The Maxwell Company bases its contention in this controversy. The decision is as follows:

"(SEAL)

NATIONAL LABOR RELATIONS BOARD
NINTH REGION

1200 Transit Building — 6 East Fourth Street
Cincinnati 2, Ohio          Telephone 381–1420

May 14, 1962

Truck Drivers Union, Local No. 413
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen & Helpers
of America
233 South High Street
Columbus 15, Ohio

Re:   MAXWELL COMPANY
Case No. 9–RC–4958

Gentlemen:

The above captioned case, petitioning for an investigation and certification of representatives under Section 9(c) of the National Labor Relations Act, has been carefully investigated and considered.

It does not appear that further proceedings are warranted because the unit herein is inappropriate for the purposes of collective bargaining, inasmuch as it is composed of persons who are independent contractors not included within the definition of employees as defined in Section 2(3) of the Act. I am, therefore, dismissing the Petition in this matter.

Pursuant to the National Labor Relations Board Rules and Regulations you may obtain a review of this action by filing a request for such review with the National Labor Relations Board, Washington 25, D. C. A copy of such request must be served upon each of the other parties to the proceeding, including the undersigned. This request must contain a complete statement setting forth the facts and reasons upon which it is based. The request (original and six copies) should be filed within ten (10) days from the date of receipt of this letter, except that the Board may, upon good cause shown, grant special permission for a longer period within which to file.

Very truly yours,

/s/ John C. Getreu
John C. Getreu
Regional Director

REGISTERED MAIL
RETURN RECEIPT REQUESTED

cc:   National Labor Relations Board
        Washington 25, D.C.
    Mr. Robert Knee, Attorney at Law, 9th Floor, Winters Bank
        Bldg., Dayton, Ohio
    Maxwell Company, Att: Mr. Tom Maxwell, 2200 Glendale-
        Milford Road, Cincinnati, Ohio
    Mr. Charles F. Hartsock, Cors, Hair, Hartsock, Attorneys, 1704
        Carew Tower, Cincinnati, Ohio."

This case is complicated because of the fact that many sections of the Labor Management Relations Act, (29 U.S.C.A. § 141 et seq.) are cited and argued by the parties, as well as numerous provisions of the regulations of the National Labor Relations Board (29 C.F.R. 100 et seq.), as are also many of the so-called implications of the regulations which, it is submitted, are controlling of the determination to be made by this Court. This, perhaps, necessarily results from the fact that it is conceded by all parties that, among the multitudinous decisions of the National Labor Relations Board and the courts, this is a case of first impression.

The enucleation of the controversy, however, convinces us that the determining issue in this case is whether or not the decision of the Regional Director on May 14, 1962, is a binding and final adjudication. We are of the view that the above-mentioned decision of the Regional Director is a final adjudication of the controversy and cannot be relitigated in the present proceeding.

The circumstances upon which our conclusion is based are the following:

The above mentioned decision of the Regional Director recited that the petition for an investigation and certification of a bargaining representative filed by the Union had been carefully investigated and considered;

That no further proceedings were warranted;

That the unit represented by the Union was inappropriate for the purposes of collective bargaining because it was composed of persons who were independent contractors as defined in the Act;

That the decision of the Regional Director dismissing the petition filed by the Union set forth the information that a review of such action could be obtained by filing a request for review with the National Labor Relations Board at its address in Washington, D. C., and

That the proper information was set forth, in the decision of the Regional Director, as to what such request for review should contain and proper notices to be given, and no review of such Regional Director's decision had ever been sought by the Union.

Now, more than five years after the decision of the Regional Director dismissing the petition of the Union for the reason that the unit was inappropriate because it was composed of independent contractors, the same issue, heretofore decided by the Regional Director, was brought before the Board by the same Union, representing the same parties. It is admitted that there has been no change in the relationship existing between The Maxwell Company and those represented by the Union at the time of the prior petition and decision in 1962.

Although the Regional Director in 1962 dismissed the Union's petition as inappropriate for collective bargaining because it was composed of independent contractors and not employees, and no review of such decision was ever sought, the Board now holds that the same unit is an appropriate unit for collective bargaining because it is composed of employees and not independent contractors. This is contrary to all that the law has held with regard to prior adjudication and contrary to the plain principle that a matter once adjudicated and not reviewed or appealed cannot be relitigated.

In discussing statutory provisions relating to the issues in this case, it should be emphasized that in 29 U.S.C.A. Section 152(3), it is provided:

"The term 'employee' shall include any employee, * * * but shall not include * * * any individual having the status of an independent contractor * * *."

If the persons represented by the Union in the unfair labor practice controversy now before us are independent contractors, they constitute a unit inappropriate for purposes of collective bargaining.

The above quoted provision of the Act was an amendment enacted by Congress

in 1947. Whether a person is an employee is always a question to be determined under the general principles of the law of agency.[1]

To sustain our conclusions that the decision of the Regional Director was final, we proceed, then, to the applicable provisions of the Act and of the Regulations providing for representatives for collective bargaining and the methods by which the Board or the Regional Director grants or dismisses petitions in representation proceedings.

In 29 U.S.C.A. Section 159, it is provided, insofar as here relevant, under the bold face heading "REPRESENTATIVES AND ELECTIONS—EXCLUSIVE REPRESENTATIVES:

"(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining * * *."

1. The legislative history of the 1947 amendments to Section 2(3) indicates clearly the congressional intent that the status of an individual as an independent contractor or employee is to be measured by the yardstick of common law. The House Committee Report reads in part as follows:

"An 'employee,' according to all standard dictionaries, according to the law as the courts have stated it, and according to the understanding of almost everyone, with the exception of members of the National Labor Relations Board, means someone who works for another for hire. But in the case of National Labor Relations Board v. Hearst Publications, Inc. (322 U.S. 111 [64 S.Ct. 851, 88 L.Ed. 1170] (1944)), the Board expanded the definition of the term 'employee' beyond anything that it ever had included before, and the Supreme Court, relying upon the theoretic 'expertness' of the Board, upheld the Board. * * * It must be presumed that when Congress passed the Labor Act, it intended words it used to have the meanings that they had when Congress passed the act, not new meanings that, 9 years later, the Labor Board might think up. In the law, there always has been a difference, and a big difference, between 'employees' and 'independent contractors.' 'Employees' work for wages or salaries under direct supervision, 'Independent contractors' undertake to do a job for a price, decide how the work will be done, usually hire others to do the work, and depend for their income not upon wages, but upon the difference between what they pay for goods, materials, and labor and what they receive for the end result, that is, upon profits. It is inconceivable that Congress, when it passed the act, authorized the Board to give to every word in the act, whatever meaning it wished.

On the contrary, Congress intended then, and it intends now, that the Board give to words not far-fetched meanings but ordinary meanings. To correct what the Board has done and what the Supreme Court, putting misplaced reliance upon the Board's expertness, has approved, the bill excludes 'independent contractors' from the definition of 'employee.'" H.R.Rep. 245, 80th Cong., 1st Sess. 18 (1947); Vol. 1, Legislative History of the Labor Management Relations Act, 1947, p. 309.

The late Senator Taft, co-author of the 1947 Labor Management Relations Act, commented as follows on the independent contractor exclusion in Sec. 2(3):

" * * * The conferees also adopted language in the House bill excluding from the definition of 'employee' individuals having status of independent contractors. While the Board itself has never claimed that independent contractors were employees, the Supreme Court has (the Hearst Publications, Inc., 322 U.S. 111) held that the ordinary tests of the law of agency could be disregarded by the Board in determining if petty occupational groups were 'employees' within the meaning of the Labor Relations Act. The Court consequently refused to consider the question whether certain categories of persons whom the Board had deemed to be 'employees' might not, as a matter of law, have been independent contractors. The legal effect of the amendment therefore is merely to make it clear that the question of whether or not a person is an employee is always a question of law, since the term is not meant to embrace persons outside that category under the general principles of the law of agency." 93 Cong.Rec. 6599 (1947); Vol. 2, Legislative History of the Labor Management Regulations Act, 1947, p. 1537.

Under the subheading following Section 159(b), "Determination of bargaining unit by Board," it is provided:

"(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: "

In 29 U.S.C.A. Section 159(c) (1), it is provided:

"Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

"(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section, * * *

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice."

In White v. Herzog, D.C., 80 F.Supp. 407, 410, Judge Tamm, after quoting the above statute, said:

"The Act provides, * * *, first that 'the Board shall investigate such petition' and second that *only* 'if it has reasonable cause to believe that a question of representation affecting commerce exists' shall hold a hearing upon due notice." (Emphasis supplied.)

In New Bedford Loomfixers' Union v. Alpert, D.C., 110 F.Supp. 723, 727, the court said:

"A hearing is required by § 9(c) of the Act *only* if the Board determines upon investigation of a petition for certification that a question of representation exists. In this case the Board finding was that no such question existed since the bargaining unit requested in the petition was inappropriate. An investigation is, indeed, required by the Act, but it does not appear that the Regional Director did not make an investigation appropriate under the circumstances. No particular form of investigation is prescribed. * * * The question for investigation on the present petition was essentially whether there had been, since the time of the previous determination, any such change in the status of the employees in question as would warrant a different finding in regard to their position as a craft." (Emphasis supplied.)

The Government contends that the order of dismissal by the Regional Director of the petition here involved in 1962 on the ground that the unit of employees represented by the Union was inappropriate for the purposes of collective bargaining because it was composed of independent contractors, is invalid, or of no force and effect; for the Government submits that "An *ex parte* dismissal of a representation petition * * * precludes the evidentiary hearing contemplated by Section 9(c) (1) of the Act" and that such order of dismissal cannot, therefore, be held to be a final order subject to review.

However, in Section 3(b) of the Act, (29 U.S.C.A. Sec. 153(b)), after the subheading "Delegation of powers to members and regional directors; review and stay of actions of regional directors; quorum; seal", it is provided:

"The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. The Board is also authorized to delegate to its regional directors its powers under section 159 of this title to determine the unit appropriate for the purpose of collective bargaining * * *."

In this case the Board had delegated to its Regional Director the power to determine the unit appropriate for the pur-

pose of collective bargaining, as is seen in the foregoing regulation.

In 29 C.F.R., Section 101.21, after the subheading "Procedure after hearing," it is set forth:

"Pursuant to section 3(b) of the act, the Board has delegated to its regional directors its powers under section 9 of the act, to determine the unit appropriate for the purpose of collective bargaining * * * Thus, by way of illustration and not of limitation, the regional director may dispose of petitions by administrative dismissal or by decision after formal hearing; * * * The regional director may at any time transfer the case to the Board for decision, but until such action is taken, it will be presumed that the regional director will decide the case. *In the event the regional director decides the issues in a case, his decision is final subject to the review procedure set forth in the Board's rules and regulations.*" (Emphasis supplied.)

Although the above Section 101.21 is preceded by the subheading, "Procedure after hearing," when read in the context of the Act and the Regulations, such Section is obviously applicable to dismissal without formal hearing, since the Regulation sets forth, in its own language, "Pursuant to section 3(b) of the act, the Board has delegated to its regional directors its powers under section 9 of the act, to determine the unit appropriate for the purpose of collective bargaining, * * *" and the above-mentioned Section 9 of the Act provides that the Board shall investigate representation proceedings *if it has reasonable cause to believe that a question of representation exists;* and *only* if it has reasonable cause to believe that such a question of representation exists, shall it grant and hold a hearing upon due notice. See White v. Herzog, 80 F.Supp. 407, and New Bedford Loomfixers' Union v. Alpert, 110 F.Supp. 723. Consequently, if the Board or the Regional Director, to whom it delegates its duties in this regard, finds no reasonable cause to believe that a question of representation exists, the Board or the Regional Director does not hold a hearing but decides the question by an administrative dismissal.

We are of the view that the Regional Director acted properly in not holding a hearing. There seems no question about that proposition for, as the cases show, a hearing is held *only* if there is reasonable cause to believe that a question of representation does exist. If such a question does not exist, the only procedure that seems reasonable to follow is to dismiss the Union's petition, with right of review which, it appears to us, is the procedure provided in 29 C.F.R. 101.18(c). In this case, the Regional Director, in dismissing the Union's petition for representation, stated that the Union could obtain review of the action by filing, within ten days, a request for such review by the Board.

It was said by the Trial Examiner that the foregoing Section of the Regulations provided "in effect" that when a Regional Director dismisses a petition without a hearing because of inappropriateness of the unit sought, the petitioner may appeal to the Board as a matter or right; and the Trial Examiner continued:

"It is clear therefore that the 'request for review' procedure, which contemplates only *discretionary* review by the Board, was not intended to apply to summary dismissals, and that any limitations placed by Section 102.67 (f) of the Board's Rules upon subsequent litigation by parties who fail to request review are not applicable to parties who fail to exercise their right to appeal. (Significantly, the Board's Rules are silent as to any like limitation on parties who fail to exercise the latter right.)"

We are not persuaded by this ingenious argument. The terms, "appeal" and "review," are often used in the Labor Management Relations Act cases to mean

the same procedure.[2] In fact, in the Trial Examiner's decision in the controversy before us, he set forth:

"On April 25, 1962, the Union filed with the Board a petition for an election among Respondent's 'truck drivers.' On May 19, 1962, the Regional Director dismissed the petition on the basis of an *ex parte* investigation, stating that the unit sought was inappropriate because it was 'composed of persons who are independent contractors not included within the definition of employees as defined in Section 2(3) of the Act.' No *appeal* was taken from this ruling." (Emphasis supplied).

If any special advantage attached to the right of appeal, rather than the right to seek review, there was nothing in the Act or the Regulations that prevented the Union from appealing from the Regional Director's decision of 1962. But there was nothing erroneous or incorrect about the Regional Director's decision in 1962. It is only since that time that the Board has changed its *policy* with regard to determining who are independent contractors and who are employees.

We then come to the methods provided by the Regulations for decision determining whether a Union represents an appropriate unit of employees for collective bargaining, or for a decision by administrative dismissal and review.

In 29 C.F.R. 101.18, it is provided that, upon receipt of the petition as to whether a Union represents an appropriate unit of employees, the case shall be docketed and assigned to a member of the staff, usually a field examiner, for investigation. He thereupon conducts an investigation to ascertain the appropriateness of the unit of employees for the purposes of collective bargaining and the existence of a bona fide question concerning representation within the meaning of the Act. It is also provided in such Regulations that:

"The petitioner may on its own initiative request the withdrawal of the petition if the investigation discloses that no question of representation exists within the meaning of the statute, because, among other possible reasons, the unit is not appropriate * * *.

"For the same or similar reasons the regional director may request the petitioner to withdraw its petition. If the petitioner, despite the regional director's recommendations, refuses to withdraw the petition, the regional director then dismisses the petition, stating the grounds for his dismissal and informing the petitioner of his right of appeal to the Board in Washington, D. C. * * * The petitioner may within 10 days appeal from the regional director's dismissal by filing such request with the Board in Washington, D. C., [and] after a full review of the file with the assistance of its staff, the Board may sustain the dismissal, * * * or may direct the regional director to take further action."

The provision of the Regulation for an investigation of a petition of a Union for representation of employees is most comprehensive and is not merely an arbitrary or perfunctory act.[3]

---

2. In administrative law, "appeal" and "review" mean the same procedure. In 2 Am Jur 2d under the title, Administrative Law, Section 540, it is provided:

"A statute providing for revision of the action of one administrative officer or body by another may provide for an appeal, for review, or for redetermination. While very commonly the statutes provide for an 'appeal,' strictly speaking, appeals refer to appellate proceedings in the judicial process and the use of the word 'appeal' in connection with an administrative proceeding has been said

not to be accurate. The term is adopted partly because of the analogy between judicial and administrative review proceedings and partly because of want of language apt for denominating it."

3. § 101.18 Investigation of petition.
(a) Upon receipt of the petition in the regional office, it is docketed and assigned to a member of the staff, usually a field examiner, for investigation. He conducts an investigation to ascertain (1) whether the employer's operations affect commerce within the meaning of the act,

A reading of this Regulation discloses that the investigation provided therein obviously entails a great deal of inquiry and labor, and supplies a wealth of information upon which the Regional Director and the Board may act in carrying out their functions to determine whether the petitioning Union is, or is not, entitled to be the bargaining agent of the persons it represents.

The proceeding, in this case, before the Regional Director was obviously a proceeding in which either he or the Board, by personal inquiry, ascertained as a result of evidence appearing in the petition for representation filed by the labor organization and from all interested parties, whether or not the grouping or unit of employees described in the

petition constituted an appropriate bargaining unit. What is "summary" or "ex parte" in a legal proceeding is not considered in the same sense as in an administrative proceeding. Here, in the proceeding before the Regional Director, there was, as mentioned, a petition filed by the Union for certification as the bargaining agent of the persons therein represented. This petition, according to the requirements of 29 C.F.R. Sec. 102.-61, was required to contain the following:

"(a) A petition for certification, when filed by an employee or group of employees or an individual or labor organization acting in their behalf shall contain the following:

(1) The name of the employer.

(2) the appropriateness of the unit of employees for the purposes of collective bargaining and the existence of a bona fide question concerning representation within the meaning of the act, (3) whether the election would effectuate the policies of the act and reflect the free choice of employees in the appropriate unit, and (4) whether, if the petitioner is a labor organization seeking recognition, there is a sufficient probability, based on the evidence of representation of the petitioner, that the employees have selected it to represent them. The evidence of representation submitted by the petitioning labor organization or by the person seeking decertification is ordinarily checked to determine the number or proportion of employees who have designated the petitioner, it being the Board's administrative experience that in the absence of special factors the conduct of an election serves no purpose under the statute unless the petitioner has been designated by at least 30 percent of the employees. However, in the case of a petition by an employer, no proof of representation on the part of the labor organization claiming a majority is required and the regional director proceeds with the case if other factors require it unless the labor organization withdraws its claim to majority representation. The field examiner, or other member of the staff, attempts to ascertain from all interested parties whether or not the grouping or unit of employees described in the petition constitutes an appropriate bargaining unit. The petition may be amended at any time prior to hearing and may be amended during the

hearing in the discretion of the hearing officer upon such terms as he deems just.

(b) The petitioner may on its own initiative request the withdrawal of the petition if the investigation discloses that no question of representation exists within the meaning of the statute, because, among other possible reasons, the unit is not appropriate, or a written contract precludes further investigation at that time, or where the petitioner is a labor organization or a person seeking decertification and the showing of representation among the employees is insufficient to warrant an election under the 30-percent principle stated in paragraph (a) of this section.

(c) For the same or similar reasons the regional director may request the petitioner to withdraw its petition. If the petitioner, despite the regional director's recommendations, refuses to withdraw the petition, the regional director then dismisses the petition, stating the grounds for his dismissal and informing the petitioner of his right of appeal to the Board in Washington, D.C. The petition may also be dismissed in the discretion of the regional director if the petitioner fails to make available necessary facts which are in its possession. The petitioner may within 10 days appeal from the regional director's dismissal by filing such request with the Board in Washington, D.C., after a full review of the file with the assistance of its staff, the Board may sustain the dismissal, stating the grounds of its affirmance, or may direct the regional director to take further action.
[24 F.R. 9095, Nov. 7, 1959, as amended at 32 F.R. 9548, July 1, 1967]

(2) The address of the establishments involved.

(3) The general nature of the employer's business.

(4) A description of the bargaining unit which the petitioner claims to be appropriate.

(5) The names and addresses of any other persons or labor organizations who claim to represent any employees in the alleged appropriate unit, and brief descriptions of the contracts, if any, covering the employees in such unit.

(6) The number of employees in the alleged appropriate unit.

(7) A statement that the employer declines to recognize the petitioner as the representative within the meaning of section 9(a) of the act or that the labor organization is currently recognized but desires certification under the act.

(8) The name, affiliation, if any, and address of the petitioner.

(9) Whether a strike or picketing is in progress at the establishment involved and, if so, the approximate number of employees participating, and the date such strike or picketing commenced.

(10) Any other relevant facts."

Subsequently, as above mentioned, according to the requirements of the Regulations, the foregoing petition was docketed, and assigned to a member of the Regional Director's staff (usually a field examiner) for investigation to ascertain, among a number of other matters, the appropriateness of the unit of employees for the purposes of collective bargaining, or a bona fide question concerning representation within the meaning of the Act. Thereupon the field examiner, or other member of the staff, was required to ascertain from all interested parties whether or not the grouping or unit of persons described in the petition constituted an appropriate bargaining unit.

It was only after the foregoing investigation of the petition by the Regional Director, or his representative, and the conclusion of such investigation and efforts to ascertain from all the interested parties whether or not the grouping or unit of employees constituted an appropriate bargaining unit, that the Regional Director, acting upon the report of such investigation and after consideration of the case, decided that further proceedings were not warranted because the unit represented by the petitioning Union was inappropriate for the purposes of collective bargaining, inasmuch as it was composed of persons who were independent contractors and, therefore, were not included within the definition of employees as defined in the Act.

All of the foregoing indicates that the proceedings of docketing, investigation, and decision were not "summary" or "ex parte" in the commonly accepted meaning of those terms, but were comprehensive and extensive investigations of the claims of all parties concerned.

Apparently, the Government relies on the fact that there was no formal hearing, no witnesses sworn, and no evidence introduced as in a typical adversary proceeding. But the decision of the Regional Director, after careful investigation and consideration of the petition, that the unit represented by the petitioning Union was inappropriate for collective bargaining purposes because it was composed of independent contractors, was a final decision since no review was sought, although review was provided for in the Act, in the Regulation, and explicitly in the decision of the Regional Director.

We are of the view that such decision was conclusive and, since no review was sought, it was a final determination in this case that the persons represented by the Union were independent contractors and not employees, and that the same issue involving the same Union, representing the same parties, with no change of status or relationship, cannot now be relitigated. Certainly, if the petitioning union was not satisfied, it could have availed itself of the right of review by the Board, as was provided in the Act, in the Regulation, and in the decision of

the Regional Director and, at that point, could have had a hearing if the law had permitted such a hearing under the circumstances of this case. "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 536, 85 L.Ed. 624. On request for review the Union could have had any hearing to which it was entitled before the Board itself and, after such review by the Board, by petition for review to the court.

In any event, the Act confers upon the Board a broad discretion to determine the appropriate bargaining unit. Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040. The Board's decision is conclusive, unless arbitrary or capricious. Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251. See also N.L.R.B. v. Prudential Insurance Company of America, 154 F.2d 385 (C.C.A. 6). The Board has wide discretionary power in determining the appropriate bargaining agent and its determination will be disturbed only when it is so unreasonable and arbitrary as to exceed its power. The Mountain States Tel. and Tel. Co. v. N.L.R.B., 310 F.2d 478 (C.C.A. 10).

At this point, it is to be emphasized that the Regulations of the Board clearly provide for decision by the Regional Director, after investigation, that the unit represented by the Union is not an appropriate unit for collective bargaining and that such decision does not require a formal adversary hearing; that, by specific provision of the Regulations that the party shall have the right to request review by the Board of the action of the Regional Director, no party is prejudiced or denied due process by such a decision. Moreover, it appears from a Regulation promulgated by the Board in 1961 (29 C.F.R. § 102.67) that it was provided that a failure to request a review of the decision of the Regional Director "shall

preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding." See Amalgamated Clothing Workers of America, AFL–CIO v. N.L.R.B., 124 U.S.App.D.C. 365, 365 F.2d 898, 902. The foregoing is substantiated by the references to the Regulations hereinafter discussed.

Appeal from the Regional Director's decision dismissing the petition of the Union in representation proceedings under Section 9(c) of the Act is provided in 29 C.F.R. 101.18(a) and (c), where it is declared that, upon receipt and docketing of the petition in the regional office, it is assigned for investigation to a field examiner, who thereupon conducts such investigation to ascertain, among other matters, the appropriateness of the unit for the purposes of collective bargaining; and, accordingly, the field examiner attempts to ascertain from all the interested parties whether or not the grouping or unit of employees described in the petition constitutes an appropriate bargaining unit; that the petitioner may, on its own initiative, request the withdrawal of the petition if the investigation discloses that no question of representation exists within the meaning of the statute, because among other possible reasons, the unit is inappropriate; that, for the same reason, the Regional Director may request the petitioner to withdraw its petition and, if the petitioner, despite the Regional Director's recommendation, refuses to withdraw the petition, the Regional Director may dismiss the petition, stating the grounds for his dismissal and informing the petitioner of his right of appeal to the Board in Washington, D. C. Furthermore, according to this Regulation, the petitioner may, within ten days, appeal from the Regional Director's dismissal by filing such request with the Board in Washington, D. C.

In 29 C.F.R. 101.63, it is provided that after a petition for certification has been filed by a labor union under Section 9 (c) of the Act (the same provision of the

Act under which the above-mentioned 29 C.F.R. 101.18 was promulgated), if it appears to the Regional Director that there is reasonable cause to believe that a question of representation exists, he shall prepare a notice of hearing to be served on the parties. However, according to the same Regulation, the Regional Director may dismiss the petition, without hearing; and it is provided: "The Regional Director's dismissal shall be by decision, and a request for review therefrom may be obtained under 102.67 * * *." (29 C.F.R. 102.67).

29 C.F.R. 102.67(f) provides that:

"The parties may, at any time, waive their right to review. Failure to request review shall preclude such parties from litigating in any related subsequent unfair labor proceeding, any issue which was raised or could have been raised in the representation proceeding; * * *."

It is contended by the Board that the foregoing provision of the Regulation 29, Section 102.67 "clearly refers only to a post hearing dismissal of a certification petition—that is, an action based on the merits as developed after a full hearing," instead of a decision by the Regional Director dismissing the petition of the Union after finding that the unit represented by the Union is inappropriate for collective bargaining. If read alone, 29 C.F.R. 102.67 might be interpreted to refer only to a post hearing dismissal of a certification petition; but that is not here controlling. We are concerned with the review procedure of a decision of dismissal by the Regional Director under 29 C.F.R. Section 102.63, where he has found on investigation that there is no reasonable cause to believe that a question of representation exists. That decision of dismissal is subject to review by the Board; but the provision governing such review is not definitely set forth in 29 C.F.R. 102.63. However, it is provided therein that review of such a dismissal of a petition by the Regional Director without a hearing may be obtained under the provisions of another Section of the Regulations, namely: 29 C.F.R.

102.67, in spite of the fact that such Section might be said, generally, to deal with dismissals after hearing. The specific provision in 102.63 that a dismissal of a petition without a hearing shall be obtained under 29 C.F.R. 102.67, therefore, directly provides for review of a decision of dismissal by a Regional Director without hearing. Whether there is ambiguity in these provisions of the Regulations need not enter into our determination, although it is to be said that there seems to be an excessive repetition and a certain confusion in the provisions of the Regulations commencing with "Subpart C—Representation cases under Section 9 (c) of the Act * * *," 29 C.F.R. 101.-17 et seq. and "Part 102—Rules and Regulations, Series 8," 29 C.F.R. 102.1 et seq.

We are of the view that the Regulations above referred to provide for the Regional Director's investigation of the Union's petition for representation; for his conclusion that there was, or was not, a reasonable cause to believe that a question of representation existed; for his dismissal, by decision, without a hearing, on the ground that, after extensive investigation, he found that no question of representation existed; for the Regional Director's notice that review of his decision might be requested from the Board within ten days after receipt of his decision; and that failure to request review precluded relitigating in any subsequent unfair labor practice, such as that now before us, of any issue which was, or could have been, raised in the representation proceeding.

The above Regulations assured due process in providing for review and also provided for the conclusive determination that the unit sought by the Union in 1962 was inappropriate for the purposes of collective bargaining, since the Union's failure to request review of the Regional Director's decision precluded relitigation, in this unfair labor practice proceeding, of the issue which was raised and determined in the representation proceeding, namely: Whether the unit represented by the Union was an inap-

propriate unit for collective bargaining because it was composed of independent contractors and not employees as defined in the Act.

Our attention is called to the claim of the National Labor Relations Board in this case that "Section 9(c) (1) of the Act provides for an 'appropriate hearing upon due notice' to resolve a 'question of representation'—that is, preelection matters of the sort in issue here." It seems that the Board has misread Section 9(c) (1) as above quoted since that Section provides that "the Board shall investigate such petition and *if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.*" (Emphasis supplied.)

In this case, it is obvious that the Regional Director, representing the Board, investigated the petition and had no reasonable cause to believe that a question of representation existed, since he found that the persons represented by the petitioning Union were independent contractors, and that according to Section 152 of the Act, any individual having the status of an independent contractor, was not an "employee" and, accordingly, that the petitioning Union was not representing employees, and that there was no reasonable cause to believe that a question of representation existed.

The Board, it appears to us, bases its case upon a false premise. It states that, although the Regional Director decided that persons represented by the Union were found to be independent contractors, and not employees in 1962—which decision was not appealed, or from which review was not sought—nevertheless The Maxwell Company could not rely upon such decision because that decision was based upon a principle which the Board thereafter abandoned in the following year; that "the Board *changed its position* on the *employee status* of lessor drivers *such as those here*"; and that "*This policy change* was enunciated in published Board (and later, Court) decisions." (Emphasis supplied.)

Now the fact is that whether an individual is an employee or an independent contractor does not depend in any degree on "change of position" by the Board or on "policy change."

Prior to 1947, it appears that Congress had never intended that the protection of the Act should be extended to independent contractors; but there was a tendency on the part of the Board, affirmed by the courts, to stretch the Act's "definition of employee" far beyond its established common law meaning, in order to bring within its coverage persons who were not employees under traditional common law tests. Congress, at that time, expressly repudiated the expanded definition of the term "employee" as established by the Board and as affirmed by the Supreme Court in the case of N.L.R.B. v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, and in 1947 amended the Act, requiring the status of an individual as an independent contractor or employee to be determined according to the standards of the common law—as is described in the Legislative History of the Labor Management Relations Act of 1947, heretofore quoted in the footnote on page 487 of this opinion.

So the Board is incorrect in its assumption in this case that The Maxwell Company cannot rely on the decision of the Regional Director in 1962 to the effect that the persons in the unit then represented by the Union were independent contractors, and that the Company is bound by the subsequent "change of position" and "policy change" of the Board in subsequent years, to the effect that the same unit represented by the same Union are now employees and not independent contractors.

As heretofore said, a "change of position" or a "policy change" of the Board cannot be utilized to change the status of persons, theretofore held independent contractors, to the status of employees.

Whether an individual is an employee or an independent contractor is, as above shown, determined by the law of agency.

Whether an individual is an employee or an independent contractor is a matter depending on the factual background, and involves the application of law to facts—what do the facts establish under the common law of agency: employee or independent contractor? Many versed in the law might conclude that the individuals involved were independent contractors; others might conclude that they were employees—but such conclusions must be based upon the factual background in the case.

The choice to be made in this case can, therefore, be said to be between two fairly conflicting views, and the record could well be said to offer a choice between such views, either that the individuals represented in the petition of the Union in 1962 were independent contractors or were employees. And whatever choice were adopted by the Board, this Court would have no authority to make a different choice.

However, to state again our conclusion, the unreviewed decision of the Regional Director in 1962 is final and binding in its holding that the individuals represented by the unit in the petition of the Union were independent contractors; and the same issue involving the same Union and the same individuals whose status has, admittedly, not changed since 1962, cannot, five years later, be relitigated on the ground that they are now employees rather than independent contractors because of a "change of policy" or "change of position" on the part of the Board in regarding them at the present time as employees rather than independent contractors. Whether the principle of refusing to permit relitigation of such issue at the present time be termed res judicata, collateral estoppel or simply declining to follow unfair and inequitable procedures, is not important. The controlling and determining consideration in this case is that the 1962 decision of the Regional Director is final and binding, and according to the Regulations cannot now be relitigated.

It is objected, in the opinion of the Court in this case, that the Regional Director's decision on the question of an appropriate bargaining unit cannot be final, even though no appeal from such decision has been taken to the Board. That proposition assuredly might have been maintained *prior to 1959*, at which time Congress amended the Act providing for the delegation by the Board of important powers to the Regional Directors. Among these delegated powers to the Regional Directors was the power "to determine the unit appropriate for the purpose of collective bargaining * * * and certify the results thereof, except that upon the filing of a request therefor with the Board by any interested person, the Board may review the action of a regional director delegated to him under this paragraph, but such a review shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director." 29 U.S.C.A. Section 153(b) (1959).

What can the foregoing mean except that, according to statute, the Board, as in the instant case, may delegate the power to determine the unit appropriate for collective bargaining, and that, as the statute further provides, *upon certain conditions the Board may review the action of the Regional Director*.

We conclude that, by the above-named amendment of the statute, the Board may delegate, and has delegated in the instant case, its power to determine the unit appropriate for the purpose of collective bargaining, and to certify the results, except that upon certain conditions the Board may review such action of the Regional Director. This is by statutory enactment.

What are the conditions for such a review? The Board has set forth such conditions in the regulations applicable to the Act.

These regulations provide that: "Pursuant to section 3(b) of the act, the Board has delegated to its regional directors its powers under section 9 of the act, to determine the unit appropriate

for the purpose of collective bargaining * * *. Thus, by way of illustration and not of limitation, the regional director may dispose of petitions by administrative dismissal," as was done in this case. Title 29, Chapter 1, Section 101.21 (a) C.F.R. (1961). It is further provided that: "The regional director may at any time transfer the case to the Board for decision, but until such action is taken, it will be presumed that the regional director will decide the case. *In the event the regional director decides the issues in a case, his decision is final* subject to the review procedure set in the Board's rules and regulations." Title 29, Chapter 1, Section 101.21(a) C.F.R. (1961). (Emphasis supplied.)

There is, then, no question that the Regional Director's decision in this case is final, subject to the review procedure set forth in the Board's rules and regulations.

What, then, are the review procedures set forth in the Board's rules and regulations? It is provided in the regulations that *"The regional director may proceed upon the record,* or after oral argument or the submission of briefs, or further hearing, as he may deem proper, to determine the unit appropriate for the purpose of collective bargaining" and dismiss the petition or direct an election, or make other disposition of the matter. Title 29, Chapter 1, Section 102.67(a) C.F.R. (1964). "The decision by the regional director shall set forth his findings, conclusions and order or direction. *The decision of the regional director shall be final*: provided, however, that, within 10 days after service thereof any party may file eight copies of a request for review with the Board in Washington, D. C." Title 29, Chapter 1, Section 102.67(b) (1964). (Emphasis supplied.)

But the important issue in this case is resolved by the following regulation: "The parties may, at any time, waive their right to request review. Failure to request review *shall preclude such parties from relitigating, in any related*

*subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding."* Title 29, Chapter 1, Section 102.67(f) (1964).

Here, then, is the provision for delegation by statute to the Regional Director by the Board of the power to determine the appropriate bargaining agent, and the provision, *by statute,* for review of the Regional Director's action by the Board, subject to conditions specified by the Board.

What are the conditions for review specified by the Board?

We, first, have the regulations of the Board providing that the decision by the Regional Director shall be final, subject to the review procedures set forth in the Board's rules and regulations. These review procedures set up by the Board's regulations state that the Regional Director may proceed on the record and determine the unit appropriate for collective bargaining, and that his decision shall be final unless request for review be filed within 10 days after service of the Regional Director's order. Further, the regulations set up by the Board provide that failure to request review shall preclude relitigation in any subsequent unfair labor practice proceeding of any issue that was, or could have been, raised in the representation proceeding. Under statute and regulations of the Board itself, the respondent is precluded from now relitigating any issue that was, or could have been, raised in the representation proceeding; and by regulation of the Board, the decision of the Regional Director's holding that the Union was not an appropriate agent for bargaining purposes is now final and cannot be relitigated in this proceeding.

Here, then, is the statutory provision for delegation to the Regional Director by the Board of power to determine the unit appropriate for collective bargaining, except that the Board may review the action of the Regional Director upon a request made by any interested party. In the light of the foregoing, what, then, is the result of the determination of the

Regional Director, if no review of his action is sought? The Board considered that, if no review were sought as provided by statute, then the determination of the Regional Director was final, and, accordingly, the Board embodied such conclusions in the regulation above quoted, adding, at the same time, that failure to request review would preclude relitigation, in any subsequent unfair labor practice proceeding, of any issue that was, or could have been, raised in the representation proceeding. This, it seems to us, was only a reasonable exercise of the Board's authority to promulgate regulations to carry out the provisions of the Act.

When the statute provided that the Regional Director determine the appropriate bargaining unit, except that the Board might review his action, upon a request made by any interested party, there seems no reasonable escape from the conclusion that the statute intended the Regional Director's decision to be final, except for review, and since no review was sought, there seems, then, to be no question that the Regional Director's decision was final, and all of the Board's regulations setting forth that such decision was final, and not subject to relitigation in any subsequent unfair labor practice proceeding, were properly promulgated by the Board.

It is suggested, contrary to our determination, that there are no provisions in the Act which make a Regional Director's decision on the question of an appropriate bargaining unit final for all time, or, once made, without review, binding upon the Board itself; and that any regulation to such effect would represent an unlawful delegation of the authority conveyed by the statute, which places the power to make the determination solely in the hands of the Board itself, subject to judicial review. To answer the last suggestion first, the Act, itself, as we have shown above, provides for the delegation by the Board to the Regional Director of the power to make the determination as to the appropriate bargaining unit, "except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director." 29 U.S.C.A. Section 153(b). In the absence of appeal or review upon motion, the decision of the Regional Director becomes the decision of the Board. That decision is the final decision or order of the Board, which can be reviewed by the United States Court of Appeals under the provisions of 29 U.S.C.A. Section 160(f). In this case, there was no motion asking the Board to review the order of the Regional Director, and, after his decision became the decision of the Board, there was no review sought in the United States Court of Appeals.

The next contention to be answered is that the Regional Director's decision as to an appropriate bargaining agent, cannot be held to be a final determination, even where there is no review by the Board, and that any regulation, such as that found in 29 C.F.R. Section 101.21, stating that such action of the Regional Director is final unless review is sought within 10 days of such action, is an unlawful delegation of power, and that the regulation promulgated by the Board, as found in 29 C.F.R. Section 102.67, to the effect that the failure of the union to seek review of the Regional Director's decision, shall preclude it from relitigating in any related unfair labor practice proceeding, any issue which was, or could have been, litigated in the representation proceedings, represents what is, in fact, an unlawful delegation of the authority conveyed by the statute which, it is said, places the power to make the determination solely in the hands of the Board.

What appears to be the underlying basis of these various contentions and objections is the holding, in this opinion, that the unappealed decision, as to the appropriate bargaining unit, of the Regional Director is final and shall pre-

clude the parties from relitigating, in any related subsequent unfair labor proceeding practice, any issue which was, or could have been, raised in the representation proceeding, although the regulations promulgated by the Board expressly provide that the unappealed determination of the Regional Director shall be final, and also that the parties shall be precluded from relitigating in any related unfair labor proceeding. In other words, it is contended that these regulations promulgated by the Board itself, and never changed or questioned by the Board, should be held to be unlawful and void as far as their application to this case goes.

Perhaps the principal contention advanced by the Board is that an administrative agency is not precluded from changing its policies and that, in this case, the National Labor Relations Board *merely changed its policy* when, after concluding that the Union was not an appropriate bargaining unit in its decision on the first representation proceeding *filed by the Union*, afterward found, in a subsequent unfair labor practice proceeding filed by the same Union, involving the same parties, under the same circumstances, that the Union was an appropriate bargaining agent.

It then becomes important to distinguish between a change of the Board's policy and a change of one of the Board's final decisions. In a similar situation, it has been noted that "power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies." [4]

Whether a man is an employee or an independent contractor is determined by the law of agency, according to the amendment made in the Taft-Hartley Act, as above mentioned, and cannot be affected by a change of position, or of policy, by the Board. *Having once determined that those whom the Union represented were independent contractors* and not employees, the Board cannot, after its decision has become final, permit relitigation of the same issue, involving the identical parties, with no claim of mistake, with no change of circumstances intervening, or no newly-discovered evidence that, if known at the time of the original decision, might, at that time, have vitiated it—and, thereafter, decide that those who were previously determined by final decision to be independent contractors, are now employees.

If there were power in an administrative agency to reopen and reconsider a final decision, there would be no end to litigation, and the exercise by an administrative agency so to change a final decision would be contrary to public policy.

There are a few exceptions to the general rule that an administrative agency cannot reopen and change a prior decision (which are not here pertinent) since it is provided in 29 U.S. C.A. Section 160 that "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in Section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." Thus, the public cannot be deprived of the protection of the statute because of mistaken action in the past on the part of the Board. See N.L.R.B. v. Baltimore Transit Co., 140 F.2d 51 (C.A. 4); and since it is the duty of the Board, as set forth in the statute, to prevent unfair labor practices, the fact that it may have certified an independent union as a bargaining representative does not limit its power later to declare such union to be company dominated, and order its disestablishment, if such course is seen to be proper in the light of subsequent developments which disclose that, at the time of the organization of the independent union, anti-union supervisory employees assisted in the

4.   2 Am.Jur.2d, Section 522.

organization of such a union in opposition to a CIO Local, and the employer entered into a closed-shop bargaining agreement with the independent union with notice that it was to be used to discriminate against employees on account of their previous activities on behalf of the CIO, and discharge such employees, knowing that they were denied membership in the independent union because of their previous activities in the CIO. Wallace Corp. v. N.L.R.B., 141 F.2d 87 (C.A. 4). Moreover, in passing, it may be said that an observation made by the Board, in a decision dismissing a representation petition, as to the appropriateness of a certain bargaining agent, did not bind the Board, as to the appropriateness of such unit, since the dismissal of the prior petition was not based upon that ground, and the principle of res adjudicata had no application to such action. District 50, United Mine Workers of America v. N.L.R.B., 234 F.2d 565 (C.A. 4).

All of the foregoing is only to say that the Board may reopen and change a prior final decision, if such decision were procured by fraud or if it resulted in deprivation of the protection given the public by the statute, because of action of the Board in the past, based on an admitted mistake; or if a decision were based on secret unfair labor practices by the parties concerned, which the Board subsequently discovered; or, in short, any decision of the Board could be reopened or set aside on grounds which would justify a court in setting aside a contract as unconscionable, or against public policy.

In Thrifty Supply Co. of Tacoma, Inc. and Teamsters Local Union No. 599, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Independent, 153 National Labor Relations Board, the Board held that, generally, issues raised and determined in earlier representation cases may not be relitigated in subsequent complaint proceedings. The Board went on to say that this rule, however, does not apply where a showing is made that there is newly-discovered evidence or evidence which was unavailable at the representation proceeding. The Board stated: "The General Counsel, in the instant case, makes no claim of this nature, asserting only that 'there was not sufficient testimony taken at the "R" hearing to accurately determine the facts.' He argues that the line of cases above noted is applicable only to refusal to bargain situations, and that where we have the issue arising in a discriminatory discharge case and it involves 'not solely whether Fisher was in fact a supervisor but also encompasses the question of whether Respondent led the rank and file employees to conclude that Fisher was speaking for management, either as a supervisor in fact or as an agent, it may be relitigated.'" After quoting Section 102.67(f) of the Board's rules and regulations, as amended, to the effect that failure to request review shall preclude "such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding", the Board declared that this section does not, on its face, purport to limit relitigation to refusal-to-bargain proceedings, and stated that the logic of such limitation was not readily apparent. The Board upheld denial of the right to relitigate the representation decision there involved.[5]

---

5. In the course of its decision, the Board stated:
"The instant case can hardly be described as an unrelated unfair labor practice proceeding, inasmuch as Respondent's responsibility for Fisher's conduct turns on his supervisory status which was also a unit issue in the representation case. It also may be noted that the issue was a major one in the representation hearing since Respondent was, at that time, claiming Fisher to be a supervisor, and determination to that effect would have resulted in a dismissal of the entire proceeding, inasmuch as it would have left only one man in the unit. The issue thus was one which either was, or could have been fully litigated by the same parties. Although

the General Counsel argues to the contrary, litigation of Fisher's supervisory status in the representation proceeding could have included an inquiry into both the actual or apparent authority with which Respondent had clothed him. The position now urged by the General Counsel is indeed anomalous. In the instant case, based on a complaint issued by the same Regional Director and relying substantially on the same evidence which led the Regional Director to find Fisher *not* to be supervisory, he urges that I now receive evidence that he claims would lead to the opposite conclusion. Moreover, he would accomplish this without making any showing of substantial change of circumstances, or any claim that he had available newly discovered evidence or evidence which was unavailable at the time of the representation proceeding. To support his claim, he places reliance upon a line of cases alleged to stand for the proposition that a representation proceeding does not 'finally and conclusively' resolve an issue of supervisory status where it arises in a subsequent 8(a) (1) and (3) case as distinguished from an 8(a) (5) case. See Southern Airways Company, 124 NLRB 749; N.L.R.B. v. Griggs Equipment, Inc., 307 F.2d 275 (C.A. 5); and Leonard Niederriter Company, Inc., 130 NLRB 113 Although the matter is not free from doubt, I do not construe these cases to stand for so broad a proposition. In no one of them does either the Board or the courts fully discuss or explore the issue in all its aspects. In both *Southern Airways* and *Niederriter* the Board barely touches upon the question in footnotes. In *Griggs*, the issue was not even mentioned in the Board's Decision, but is noted in the decision of the court of appeals. The use of such terms as 'finally and conclusively' and 'not so fully litigated as to preclude reconsideration' suggests the possibility of relitigation, or at least that some test other than the newly discovered or unavailable evidence might be appropriate in certain situations. However, I am not persuaded that this means that relitigation is to be permitted as a matter of course where the issue is something other than a refusal to bargain. In both *Griggs* and *Southern Airways*, the representation hearings took place from 9 to 11 months after the unfair labor practices had taken place. The unfair labor practice hearings had already been completed before the representation hearings were held. The issue thus did not involve relitigation in subsequent unfair labor practice proceedings, but the binding effect of the representation decision. In affirming the Board in both cases, the court of appeals recognized that the Board had an area of discretion regarding its unit findings which normally would not be disturbed. In the *Southern Airways* case, the court stated:

"Thus we have two decisions based on the facts as they existed at two different times, several months apart. The intervening certification order *is not*, therefore, controlling although, to the extent it represents an analysis of similar facts, it may have some persuasive relevance.

This suggests a belief by the court that lapse of time might be a factor showing change in circumstances between the time of the unfair labor practice hearing and the representation hearing. In *Niederriter*, the basic issue in the unfair labor practice hearing was whether an employee, who was admittedly a supervisor at one time, had ceased to be one at a later date, and if so, whether he was discharged for his union activity after he had become a nonsupervisory employee. It was thus necessary to consider circumstances as they existed at a different time to ascertain whether or not any change had occurred. All three cases seem to be explained by the existence of circumstances indicating that changes may have occurred between the two proceedings which were properly to be considered or explored, and not to constitute broad holdings that, absent some considerations of this sort, matters previously adjudicated among the same parties can be relitigated.

"In the instant case, we have no substantial lapse of time between the unfair labor practices and the representation hearing, and no other indication that any change in circumstances had taken place. Rather, we note that within 2 weeks from the filing of the charges, we have a hearing in which a major issue concerns the supervisory or nonsupervisory status of Fisher. At that time, the same parties had a full opportunity to present evidence which would go directly to the issue of Fisher's actual or ostensible authority as it existed at the time the unfair labor practices were committed. The Regional Director, upon the record made, resolved that Fisher was not a supervisor and thus was in the bargaining unit. I am of the opinion that the cases urged by the General Counsel, despite any language which may suggest a more far-reaching result, go no further than to hold that relitigation in subsequent proceedings will be permitted only if sufficient showing is made of some sort of change in circumstances. *The purpose of forbidding relitigation is to*

In Amalgamated Clothing Workers of America, AFL–CIO v. N.L.R.B., 124 U.S.App.D.C. 365, 365 F.2d 898, the court held that *where a company was charged* with refusal to bargain with a union certified after election, the proceeding is sufficiently related to the representation proceeding to preclude litigation of such common issues as scope of appropriate unit and employees therein, but where a part of the charge involved in the relitigation issues was not refusal to bargain but rather interference with the rights of organization, the proceedings are not so related as to foreclose presentation to the National Labor Relations Board of the underlying issue. "A more natural reading of the rule, in the absence of express provision to the contrary, is one which precludes relitigation only in a 'related' subsequent unfair labor practice proceeding, construed in accordance with the doctrine announced in [Leonard Niederriter Co., 130 N.L.R.B. 113], a few months prior to the new regulation. Where a company is charged with refusal to bargain with the union certified after election, the proceeding is sufficiently 'related' to the representation proceeding to preclude relitigation of such common issues as the scope of the appropriate unit and employees therein." (ibid. p. 904). The court also observed that the rule precluding relitigation, on failure to request review, "carries over the earlier Board practice precluding litigation in a 'related' unfair labor practice hearing of an issue determined in a representation hearing, even though now the representation determination may have been made by the Regional Director." (ibid. p.

904). The foregoing adjudication seems plainly to support the rule that where the regional director dismisses a representation petition on the ground that the parties represented therein are not employees, that proceeding is sufficiently related to the unfair labor practice thereafter filed by the same party, involving the same questions as to preclude relitigation of such common issues as the appropriate unit and employees therein. "This construction of section 102.67(f) of the Board's rules, which estop relitigation in a related proceeding, is in accordance with the long-held objective of avoiding undue and unnecessary delay in representation elections." (ibid. p. 905).

It is to be emphasized that the Board, on this appeal, *does not contend that the decision of the Regional Director in 1962 was arbitrary, erroneous or incorrect* in holding that the unit then represented by the Union was inappropriate for the purposes of collective bargaining because it was composed of persons who were independent contractors; the Board bases its claim here only upon the ground that the Board had "changed its position," and "changed its policy" as to the employee status of the parties represented by the Union, although such change of policy occurred after the Regional Director's decision that the same parties represented by the same Union were independent contractors.

The prevailing opinion granting enforcement of the Board's order in certain respects is based squarely on the ground that, after the 1947 amendment to the effect that "the term 'employee' shall not include any individual having the

*put to rest an issue once litigants have been afforded full opportunity to meet it. The exceptions to this rule rest upon the need for preventing an injustice where something has occurred or been discovered which, if previously known, might have affected the outcome. Relitigation is for this purpose alone, and not to provide the parties with an opportunity to have a second chance of litigating the same issue in the hope that another, and what they regard as a more favorable, conclu-*

*sion may be reached. Accordingly, since I am satisfied that there has been no sufficient showing of any circumstances affecting Fisher's status which could not have been developed in the earlier proceeding, I regard it as inappropriate to relitigate the issue here. I find, therefore, that since I regard myself as bound by the determination that Fisher is not a supervisor, the motion to amend was properly denied and the offer of proof properly rejected."* (Emphasis supplied.)

status of an independent contractor, the Board's decisions reflected changes in the interpretation of the common law control test in relation to what constitutes an employee as contrasted with an independent contractor." There can be no dispute about this. Moreover, it is declared that the Board's decisions reflected "an evaluation of fact patterns," and were primarily concerned with applying the provisions of this amendment under the facts involved in particular cases. There can be no dispute about this; and that is exactly what the Regional Director did, and his unappealed decision is final since there has been no change in circumstances between the time of his decision, and the Board's order now before us. The Union is the same, the Company is the same, the parties represented by the Union are the same, the fact pattern is the same, and all the factual situations are the same now, as at the time of the Regional Director's decision. I am unable to see how a result, different from that in the Regional Director's decision, can now be achieved by the Board by a new "evaluation of fact patterns" which are admittedly the same—with no intervening change of circumstances—as at the time of the Regional Director's unappealed decision. To me, it is clearly a case where the Board, several years after the Regional Director's unappealed decision, heard again the same case, with the same fact pattern, the same fact situation, and the same parties, where all the circumstances admittedly have not changed, and made a new decision directly contrary to the final decision of several years before. If there were any exposition or argument to sustain such a position, I fail to find it mentioned in the briefs of the parties, and, without more than the recital of a general statement, with which I entirely agree, but which I do not perceive to have any controlling significance in this case, I am unable to see how it is decisive of the same case that has already been decided in favor of the Company long ago.

The writer, then, concludes that the regulations here in question are proper and lawful, and that the decision of the Regional Director, dismissing the representation petition, from which no review was sought, was final, and the case cannot be relitigated in the subsequent unfair labor practice proceeding.

In consideration of the foregoing, the petition of The Maxwell Company should be sustained; and a decree should be entered denying enforcement of the Board's order.